## HUNT *vs.* LEWIN and WYSER.

1. A decree in chancery, that "defendants equity of redemption be forever barred," will be considered as a formal decree of foreclosure.

2. The matter of costs, in chancery proceedings, are within the discretion of the Chancellor; and are to be decreed in reference to the circumstances and justice of each case.

3. Although a Chancellor has so far a discretion upon the subject of costs, that an appellate Court will not revise that question, when presented alone; yet where a substantial question is presented,—a decree in respect to costs, may be varied on appeal, though affirmed on every other point.

4. In cases where a bill is filed by a mortgagee for foreclosure, Chancery can only act *in rem*, and decree a sale or foreclosure of the mortgaged premises; and any balance remaining on the debt, to secure which the mortgage is executed, may be recovered at law

5. But to authorise the recovery of any balance, which may exist, in the debt secured, by reason of the deficiency of the value of the pledge—there must be an express covenant in the mortgage deed, for the payment of the debt; or a separate bond or note, or other evidence of an express promise to pay the debt

6. Though in cases where mortgages are foreclosed in equity, the usual practice is to decree a sale of the mortgaged property—yet a chancellor (with the mortgagees consent,) may decree the property absolutely to the mortgagor.

In this case, which was a chancery proceeding in Tuskaloosa Circuit Court, Jonathan Hunt filed a bill against the defendants in error, for the foreclosure of a mortgage deed.

The bill stated, that Charles Lewin and Jacob Wyser being seized in fee, of a certain lot or parcel of land, situate, lying and being in the lower town of Tuskaloosa, and State of Alabama, which lot was designated and known as lot number two hundred and sixty-nine—and being indebted to the complainant in

the sum of twelve hundred and twenty-nine dollars and forty-one cents; and being desirous to obtain a longer time for the payment thereof; and being willing to secure the complainant in the payment of the aforesaid sum, with the interest thereon—they, the said Lewin and Wyser, on the nineteenth day of June, in the year of our Lord one thousand eight hundred and twenty-three, duly made and executed unto the complainant, a certain deed of bargain and sale, by way of mortgage (which was exhibited and prayed to be taken as part of the bill,) which deed was subject to a condition or proviso, that if they, the said Lewin and Wyser, should, within twelve months from the date thereof, pay to the complainant the said sum of money, with the lawful interest;—then the aforesaid deed should be void and of non effect. That the said Lewin and Wyser made default in the payment of the said sum of money, within the time specified in the deed; whereby the legal estate in the said parcel of land, became vested in the complainant. That the said sum of money being then due and in arrear, the complainant had made every effort to collect it, without success: that the lot of land so conveyed, was wholly insufficient, in point of value, to pay and satisfy the said debt; and being still delayed in its payment, he prayed the Court for a decree, subjecting the said premises to a sale, and an application of the proceeds to the payment of the complainant's claim; and also, for general relief.

The answer of Lewin, one of the defendants, (Wyser having made default,) admitted to be true, as charged in the bill, that he, together with Wyser, his co-defendant, were jointly indebted to complainant in the amount charged; and that the indenture

of mortgage mentioned in the bill, was duly made and executed by them. He admitted the non-payment of the said debt; except so far as a certain amount was concerned; but denied that the mortgaged premises were a scanty security for the debt due :—averred, that the premises were of the value of two thousand dollars; and that that sum was beyond the amount of balance owing to the complainant. The answer further alleged, that it was the express understanding between the parties, that if the mortgaged premises were not redeemed, at the time specified in the deed, the same were to become absolutely vested in the complainant; and that he was to have no further or other remedy for the said sum of money, due as aforesaid, in case said premises were not of value to that amount. The defendant, Lewin, further averred, that he had been at all times ready, on his part, to release his equity of redemption, to the complainant, in and to the said premises; and thus discharge himself from further liability in respect to the debt.

The indenture of mortgage exhibited in the complainant's bill, was of the following tenor, to wit—

"Know all men by these presents, that we, Charles Lewin and Jacob Wyser, of the town of Tuskaloosa, and State of Alabama, for and in consideration of the sum of twelve hundred and twenty-nine dollars and forty-one cents, to us in hand paid, (the receipt whereof is hereby fully acknowledged) have bargained, sold, given, granted and conveyed, and by these presents do bargain, sell, give, grant and convey unto Jonathan Hunt, part of a lot of ground, situate, lying and being in the lower town of Tuskaloosa, and State of Alabama, and known and de-

signated in the plan of said town as lot number two hundred and sixty-nine, that is, fifty feet on the corner fronting on main street, and running back the depth of said lot. To have and to hold the said premises, aforesaid, with the appurtinances and improvements thereunto belonging, unto him the said Jonathan Hunt his heirs and assigns, forever, and we, the said Lewin and Wyser, do forever warrant and defend the right, and title to the premises hereby conveyed against the claim or claims of all person or persons whatever: Provided, nevertheless, that if the said Charles Lewin and Jacob Wyser, shall, within twelve months from this date, pay to the said Jonathan Hunt, twelve hundred and twenty-nine dollars and forty-one cents, with lawful interest from this date; to be paid at the counting-house of said Hunt, in the City of Mobile, and State of Alabama, then the above deed to be void and of no effect; otherwise to be and remain in full force and effect. In testimony whereof we have hereunto set our hands and seals, this nineteenth day of June, in the year of our Lord one thousand eight hundred and twenty-three." Signed, &c.

At March term, 1829, the cause coming on to be heard on bill, answer and exhibit, it was ordered, adjudged and decreed, that the defendants' equity of redemption be for ever barred; and that whatever title they had to the premises, be vested in the complainant; and further, that the complainant pay all costs.

The complainant, having taken a writ of error, alleged, that in the record and proceedings in said cause, there was manifest error, in this, to wit:

First—The Chancellor erred, in rendering a de-

cree for the defendants: and should have decreed a foreclosure. Secondly—The Court erred, in decreeing costs against the complainant: especially in reference to Wyser, who made default. Thirdly—The writing should have been established as a mortgage. Fourthly—The relief prayed by the complainant, should have been granted — his debt established— payment decreed; and the property sold, and the proceeds applied to the payment of the complainant's debt.

SAFFOLD, J.—The plaintiff in error filed his bill in Equity, against the present defendants, charging, that they were indebted to him, one thousand two hundred and twenty-nine dollars and forty-one cents. That they, being owners of a certain town lot, were desirous to obtain longer time for payment; and, being willing to secure the complainant, they executed, on the 19th June, 1823, a deed, in th· nature of a mortgage—whereby it was expressed, that' for, and in consideration of the said sum of money, due as aforesaid, they bargained, sold, &c. to the complainant, the premises in question. But, that the deed was subject to the condition, that if Lewin and Wyser should, within twelve months from the date, pay the complainant said sum of twelve hundred and twenty-nine dollars, and forty-one cents, with lawful interest, then the deed to be void; otherwise, in full force. That no part of said sum was paid, but default made; whereby the legal estate became vested in the complainant—redeemable, in equity, on payment of principal and interest. That the whole debt remained due. That the lot was, by no means, sufficient to satisfy the complainant's demand. That the time

had elapsed, and no payment made. Whereupon, he prayed a decree, for the sale of the lot, to satisfy the debt.

Process having been served on the defendants, it was ordered by the Court, that they should plead, answer or demur, within a limited time; or that the bill be taken *pro confesso*, and set for hearing, *ex parte*.

Wyser made default. Lewin filed his separate answer. He admits that the defendants were indebted to the complainant, in the sum charged; that that they executed the instrument—that the debt has not been paid, "except the sum of ——— dollars, which was paid to the complainant, according to stipulations contained in the condition of said mortgage deed, and within the time therein limited; but the balance remains due and owing, from the defendants, on the security of said mortgaged premises—together with an arrear of interest thereon, from —— to ——."

But this defendant denies, that the said mortgaged premises are a scanty security for the same; on the contrary, he says they are of the value of two thousand dollars, and upwards, which is more than the amount for which said premises were mortgaged; that there is no other incumbrance on the same — That it was the express understanding of the parties, at the time of executing said mortgage, that if said premises were not redeemed, at the time specified, the same were to become the absolute right and property of the complainant; and, that he was to have no further or other remedy, for the debt, in case the same were not of that value. And that the defendant, on his part, is now, and at all times, here-

tofore, has been, willing to release his equity of redemption, to the said complainant, in the premises, so that he may not be farther charged, &c.

At a subsequent term, the parties appearing, by their solicitors, on motion, leave was given them, to take depositions, on giving notice.

At a term, twelve months thereafter, the record states, that the cause coming on to be heard, on bill, answer and exhibits, it was ordered and decreed, that the defendants' equity of redemption, be, and the same was for ever barred; and that, whatever title the defendants had to the premises, should be, and the same was vested in the complainant. And the complainant pay all costs.

The plaintiff now assigns, as causes of error—

1. That, in decreeing for the defendants, the Court should have decreed a foreclosure.

2. That there should have been no decree against the complainant, for costs: especially in favor of Wyser, who was in default.

3. That the instrument should have been established as a mortgage—the relief prayed, granted—the complainant's debt established—payment decreed—the property sold, and the proceeds applied to the payment of the debt.

1. The first assignment is conceived to require but slight consideration. The objection, that the decree, in favor of the defendants, should have been for a foreclosure, appears more technical than solid. It is, virtually, a foreclosure: it declares the equity of redemption to be for ever barred, and vests in the complainant, whatever title the defendants had in the premises: this is deemed sufficient. Whether it was a proper decree, according to the rules of

Chancery, is a question, falling more properly under the last assignment.

2. It is further objected to the decree, that it awards costs in favor of the defendants; and this, when one of them, Wyser, had failed to answer the bill.

The circumstance of this default, and the order *pro confesso,* thereupon—the answer of the other defendant, admitting the most material allegations of the bill, and the setting the cause for hearing on bill, answer, exhibits and proof—entitle the plaintiff, as I conceive, to the equity, if any, contained in his bill; but the failure to answer could not further affect the decree, in regard to the cost, or otherwise.

The prayer of the complainant, was for a foreclosure, and a sale of the mortgaged premises, for the payment of the debt: he neither alleged nor exhibited any other security for the demand, no bond or note, according to the usual course, when a further remedy is contemplated, than the lien on on the mortgaged property.

Lewin, though he denied not the essential allegations of the bill, yet insisted, by way of avoidance, that a parol agreement was expressed and understood, at the time of executing the mortgage, that if it was not redeemed at the time specified, the lot was to become the absolute property of the plaintiff; and that he should have no further or other security for the debt, if the property proved to be of less value: also, that said defendant then was, and, at all times previously, had been, willing to release his equity of redemption—and requested a decree, to that effect.

Admitting, as contended by the plaintiff, that this

4 s & p.                    19

supposed agreement can not be regarded, for the cause, either that it is not a part of the written agreement, and would vary it, or that proof of such agreement was not produced on the hearing—yet the mortgage contains no express covenant for the payment of any balance : and the defendant, who answers, consents to a decree, vesting the absolute title in the plaintiff.

The rule in Chancery, respecting costs is, that they do not always follow the event of the cause ; but are awarded, or not, according to the justice of the cause. They rest in the sound discretion of the Court, to be exercised upon a full view of all the merits and circumstances of the case.[a]

It has also been held, that " where, on a bill, to foreclose a mortgage, a subsequent mortgagee, or judgment creditor, who is made a party defendant, answers and disclaims—no application having been made to him before suit brought, to release or disclaim—he is entitled to costs, out of the fund, if it be sufficient ; and if not, to be paid by the plaintiff." Also, that where the parties stand equally fair, in every respect, the *actor*, who brings the other into Court, ought to pay the expense.—*Catlin* vs. *Harned et al.*[b]

There, it was conceded by the Court, that the complainant was under the necessity of making the subsequent incumbrancer a party ; and that a very slight refusal or neglect, on his part, might have been sufficient to deprive him of costs. But that, as he had not been called upon, or requested to disclaim, by release, or otherwise, which application would probably have saved the necessity of making him a

---

[a] Am.Chan Dig. 117, and authorities there cited.

[b] 3JohnsCh Rep. 61.

party, he stood equally fair with the complainant; and was entitled to cost.

If then, such a foreclosure, only, as was decreed in this case, was proper, under the contract—as it does not appear, the defendants were ever requested to release the equity of redemption, which they probably would have done; but, on the contrary, the plaintiff has sought a sale of the premises, in satisfaction, or part satisfaction of the debt, which the Chancellor below has refused to decree—it does not follow that there is any error in regard to the cost.

It is true as a general principle, that a mortgagee, in the regular prosecution of his claim on the mortgage, by bill, and where he is entitled to a recovery of the debt, is also entitled to his costs—especially if the mortgaged property be sufficient to pay both.[a] *Ellison* vs. *Wright.*[b]

But the right, as already remarked, must depend on the circumstances of the case, and the object of the bill. It has also been held, that, though the matter of cost is so far discretionary, in the Chancellor, that an appellate tribunal will not revise that question, separately; yet, where there is a fair and substantial question to be argued, on appeal, the decree may be varied, as to costs, though affirmed in every other point; but it will not be varied, as to costs, where the point, which is presented as the ground of appeal, has no substance. — *Attorney General* vs. *Butcher.*[c]

According to this doctrine, I would admit, that the question, whether or not a sale should have been decreed, involves sufficient substance to give this Court control of the cost alone, if the decree, respecting it, was obviously opposed to the equity of the

[a] 2 Madd. 555
[b] 3Con.En. Ch. R. 482 3 Russell, 458
[c] 3Con. En. Ch. R. 622 4Russ.180.

case. But, under the circumstances, I conceive, if the main principle of the decree was correct, there is no sufficient objection to the direction of the costs, to warrant the interference of this Court.

3. The remaining question, is that presented by the third assignment, which is, substantially, that the decree should have established the complainant's debt, and directed a sale of the mortgaged premises, in part satisfaction thereof.

In support of this assignment, I understand the argument to be, not, merely that a sale of the lot should have been decreed, and an account directed to be taken, and the amount of the debt reported to the Court, to ascertain the extent of the lien. If this, alone, was the object, and no recovery sought, beyond the value of the premises, the same could be equally attained, under the general decree of foreclosure, which vests in the complainant the absolute title to the lot, for sale, at his own discretion, or any other use, to which he may choose to apply it. But the object seems to be, to obtain a decree for the absolute recovery of the debt, mentioned as the consideration of the mortgage, and for a sale of the lot, in part payment—leaving the balance, thus established, to be recovered by execution, or other proceeding, in *personam,* against the defendant.

The point thus urged, presents a question, important, in principle, but which has been settled, perhaps satisfactorily, by various cases, in the English, and also in the American Courts. It is not pretended, that this mortgage contains any express covenant, for the payment of the money : if it did, as will be presently shewn, it could only constitute a ground of action, at law.

In *Dunklin* vs. *Van Dorn* and others,[a] a bill was filed to foreclose a mortgage, given to secure the payment of a bond.   The main question was, whether, in addition to the usual decree for the sale of the premises, it should be further decreed, that in case of a deficiency of proceeds, the mortgagor should pay the remainder of the debt by a given day, or that execution should issue for the same.   Chancellor *Kent* held that a mortgagee, on a bill to foreclose, is confined to his remedy on the pledge: that such a suit is not intended to act in *personam;* that a mortgagee may proceed at law on his bond or covenant, at the same time he is prosecuting on his mortgage in chancery ; or that after foreclosure, he may sue at law for the deficiency—(see also Lord *Redesdale,*[b]  *Aylett* vs. *Hill;*[c]  *Perry* vs. *Barker,*[d]  *Dashwood* vs. *Blythway.*[e]) He there also intimates his concurrence in a previous opinion, by Judge *Story,* that such suit at law, would not have the effect to open the foreclosure and revive the equity of redemption, as had been supposed by some of the earlier cases; but that the mortgagor would be entitled to a credit for the amount of the sale.

The opinion of Judge *Story,* referred to, was given in the case of *Hatch* vs. *White.*[f]   The action was at law, on a judgment rendered in another State, on a promissory note.   To secure the same debt, a mortgage on real estate had also been given by the debtor—the mortgage was considered as having been foreclosed.   The Judge, after recognizing the current doctrine, "that a mortgage is but a mere security for the debt and collateral to it," ruled, that after a foreclosure of a mortgage, the mortgagee may still recover at law, upon the attendant bond or note, the

[a] 3 Johns. Ch. R. 350

[b] 1 Sch. & Lef. 176; 13 Ve. 205.

[c] Dick. 551.

[d] 13 Ves. 198.

[e] 1 Eq. Ca. Abr. 317.

[f] 2 Gal. 152.

deficiency of the mortgaged property to pay the debt due—calculating the value of the property at the time of the actual foreclosure; and that such would be the case, whether the property was sold under a decree, or remained in the possession of the mortgagee, or was sold by him, after a strict foreclosure of the equity of redemption. He also maintains that neither course would have the effect either to satisfy the residue of the debt, otherwise secured, or to open the equity of redemption.

The Supreme Court of New York, in the case of [a] 5 Cowen 380 *The Globe Insurance Company* vs. *Lansing*,[a] recognized the principle that a foreclosure and sale, pursuant to a decree in chancery, of mortgaged property, for a sum less than the debt, was no extinguishment of the balance, but that the same, if secured by bond or note, may be recovered by suit at law, thereon.

It will be observed, however, in all these cases, that the debts had been separately secured by bond or note.

[b] 2 Munf. 337. In the case of *Drummond's adm'rs* vs. *Richards*,[b] it was decided by the Supreme Court of Virginia, that an action of covenant does not lie upon the *proviso* in a mortgage (similar to the one in this case) declaring that upon payment of a certain sum of money, the deed shall be void; that it is not an express covenant to pay, which is indispensable to sustain the action.

The doctrine of these several cases seems to be, that if the mortgaged property prove insufficient to pay the debt, yet that chancery can only act *in rem*, on a bill to foreclose. That the remainder of the debt can only be recovered by suit at law; and to authorise this, there must be either an express cove-

HUNT vs. LEWIN and WYSER.

nant in the mortgage deed, for payment of the debt, or a separate bond or note given, or other evidence of an express promise to pay it.   In this case it does not appear that any bond or note, or any written evidence of the contract, was given, other than the mortgage, and it contains no express covenant for payment.   If any other was given, the proceedings on this bill will not bar the complainant's right to recover any balance of his debt which may arise from the insufficiency in value, of the mortgaged property, to satisfy it; but the presumption is, (from its not being shown) that none such exists, and that his entire remedy must be on the mortgage.

Then the question recurs, was the complainant entitled to a decree for the sale of the premises, instead of the strict foreclosure, which has been decreed?   The ancient practice was. to decree a strict foreclosure of the right to redeem, by which means the lands became the absolute property of the mortgagee.   This has continued to be the most usual practice in England, and in the New England States of the Union, at least until very recently.   Some times, however, the Courts of each country, on proper application, have decreed sales of the mortgaged premises, under the direction of an officer of the Court—the proceeds to be applied towards the discharge of the incumbrances, according to priority; and this latter practice is generally considered the most beneficial to the mortgagor, and the most reasonable disposition of the pledge; and is that which prevails in Ireland and in New York, Maryland, Virginia, South Carolina, Tennessee, Kentucky, and some of the other States.[a]   It has also been the most usual practice in our Courts.   Even in England,

[a] 4 Kent's C. 173-4

this course has of late been sometimes adopted, main-
ly for the benefit of the mortgagors. The case of
*Mondey* vs. *Mondey*,[a] was on a mortgage affecting the
rights of an infant. Lord *Eldon* said, if there was
no precedent there for decreeing a sale, (as he be-
lieved there was not) he would make one; and di-
rected an enquiry, whether it would be for the in-
fant's benefit, that the estate should be sold.

The main object of decreeing sales, however, has
been, to secure to the mortgagors, or their represen-
tatives, any balance of the proceeds that might re-
main after satisfying the debts; or if insufficient, and
the whole debt so secured as to be otherwise recov-
erable, then to ascertain the amount of credits to
which the mortgagors were intitled. It is remarked
by Chancellor *Kent*,[b] that "if the mortgagee pro-
ceeds by bill for a technical foreclosure, the estate
becomes his property in the character of a purchaser;
and the general understanding formerly was, that by
taking the pledge to himself, he took it in satisfaction
of the debt. But that according to the case of *Took*
vs. *Hartley*,[c] if the mortgagee sells the estate, after
the foreclosure, fairly and for the best price, he may
proceed at law against the mortgagor, upon his bond,
for the difference" Further, he remarks, there has
been some embarrassment and conflict of opinion
manifested in the cases, on the point, whether the
mortgagee had his remedy at law after a foreclosure,
and without a sale of the estate. But "the better
opinion is, that after a foreclosure with or without
a subsequent sale, the mortgagee may sue at law for
the deficiency, to be ascertained in the one case by
the proceeds of the sale, and in the other, by an
estimate, and proof of the real value of the pledge

[a] 1 Ves & B. 223.

[b] 4 Com. 175.

[c] 2 Bro. 125; Dick. 785, S. C.

at the time of the foreclosure." On this point in *Hatch* vs. *White*, before referred to, Judge *Story* remarks—"the value of the estate may as well be ascertained while in the hands of the mortgagee, as after a sale, (by him;) and indeed, must be so ascertained, in order to see if it was sold at the best price." At least, says he, "the fact is not more difficult to settle, than many which ordinarily engage the attention of the courts and juries; and if the deficiency be once found, the same equity, to lave it paid, exists in both cases." In opposition to the idea, that the entire debt must be considered satisfied while the mortgagee remains in possession; he farther remarks, "if the debt be deemed satisfied while the estate is in the mortgagee's hands, it is not easy to conceive how, by his own act of transfer, he can defeat the legal effect of that satisfaction."

Then as it does not appear that complainant is entitled to any other remedy than the proceeding *in rem* on the bill to foreclose the mortgage; or if he has any other, the strict foreclosure is not conclusive against his right to recover the balance; and as decrees for sales, though most usual and often best adapted to the justice of the case, are mainly intended for the benefit of the mortgagors, and these have expressed their preference for such foreclosure, and which can not fail to secure to the mortgagee the full value or benefit of the pledge, I am of opinion, there is no solid objection to the decree as rendered below. Under this view of the case, it is unnecessary to examine the effect of the verbal agreement or understanding avered in the answer, that the mortgagee should have no farther remedy.

4 s. & p.                    20

We therefore direct a general affirmance of the decree below.

LIPSCOMB, C. J., not sitting.