## SNODGRASS v. CABINESS, ASSIGNEE, &c.

1. A regular grant of administration *eo instanti* invests the administrator with the personal assets of the intestate; and they are not subject to seizure and sale under an execution issued on a judgment rendered against the intestate, after his death, notwithstanding the administrator may have converted or fraudulently disposed of them.

2. If C. and H. combine to perpetrate a fraud on the creditors of an estate at a sale by the administrator of the property thereof, and C. *alone* becomes the purchaser, and H. *afterwards* acquires possession of the property under a contract with C. the *mere possession* of it, by H. or those claiming under him, will not, of itself, give them the right to retain it as against C. or his assignee.

Error to the Circuit Court of Madison, before the Hon. G. D. Shortridge.

THIS was an action of detinue, instituted by Stephen Carter, and subsequently revived in the name of defendant in error, his assignee in bankruptcy, against the plaintiff in error, to recover the possession of two slaves, with damages for their detention. It appeared by a bill of exceptions in the record, that the slaves in question were once the property of

one George Swink, who died on the 15th March, 1838, and that said Carter purchased them at a regular sale made by the administrator on said Swink's estate, on the 22d February, 1839; that after the death of said Swink, the Branch Bank at Decatur recovered judgment against him, McNairy Harris, et als, as partners, under the style of Geo. Swink & Co.; that execution issued on said judgment, was levied on said slaves, after said administrator's sale, and that the slaves were purchased at a sale by the sheriff, under said levy, by the said bank, and that plaintiff in error subsequently purchased them from said bank. It further appears, that after the administrator's sale, and purchase by Carter, the slaves were left in the possession of said Harris, under an arrangement between him and Carter, and that he ran off with them to the State of Tennessee, &c. The bill of exceptions also discloses numerous facts tending to show a fraudulent combination between said administrator, Carter, and Harris, at said administrator's sale, as well as other facts, conducing to show, that Harris, by an arrangement with Carter, had acquired a right to the slaves, &c.

The court charged the jury, that if they believed from the evidence, that the negroes sued for were the individual property of Geo. Swink, at the time of his death, the defendant could not urge fraud in the purchase of them at said administrator's sale, to impeach the validity of said sale, unless they should also believe from the evidence, that the bank was at the time of said sale, an execution creditor of said Swink.

The defendant's counsel asked the court to charge the jury, that if they believed said administrator's sale, and the purchase thereat, were fraudulent, or brought about by a fraudulent combination between Carter 'and Harris, Harris having the possession of the slaves, was in a better condition than Carter, and under such circumstances Carter could not recover them from Harris, or any one claiming under him, which charge the court refused to give, as asked, but qualified it by adding, that the charge was perhaps correct as an abstract proposition, but that defendant could not be heard to alledge fraud in the sale, unless the bank was an execution creditor of Geo. Swink. To the charges given, and the re-

fusal to give the charge asked, the defendant excepted, and now assigns them as error.

CLAY & CLAY for plaintiff in error.

The action was brought after the delay of —— years by Carter. S. D. Cabiness, the defendant in error, takes his place as assignee in bankruptcy, merely; consequently it is a question between Carter and the creditors of Harris. Then if Carter lent himself to the fraudulent purposes of Harris; if, as he admits upon his oath, he consented to become the secret purchaser, and intended to let Harris have the possession and benefit of the property—if, as is apparent, he assented to or acquiesced in the removal of the property by Harris, he is a party to the fraud of Harris, and cannot rightfully recover, to the prejudice of Harris's creditors, who had judgment and execution against him. Indeed, the case may be put more strongly for the plaintiff in error, for if Carter, by way of assisting Harris to defeat or defraud his creditors, placed property in Harris's possession, and suffered him to remove it, and were now attempting to recover the property of Harris, he could not sustain his claim, because he was a participator in Harris's fraud—and it is a legal axiom, founded in good sense and public policy, that *in pari delicto, melior est conditio possidentis.* In other words, if two men conspire, or combine to effectuate a fraudulent purpose, and to carry out such fraudulent purpose, one places his own property in possession of the other, the law will not interfere between them —it leaves the property in the hands of him who happens to be in possession. "A party to the fraud shall not be relieved"—even in chancery. 2 Com. Dig. tit. Chancery, 3 M. 7, top p. 617, bottom 644, 1st Am. from 5th Lond. ed.; 2 Vern. 602; Ib. 71; 2 Ves. 375.

In cases of illegal contracts, or those in which one party has placed property in the hands of another for illegal purposes, if the latter refuses to account for the proceeds, and fraudulently or unjustly withholds them, the former must abide by his loss, for *in pari delicto, melior est conditio possidentis,*" &c. 1 Kin. L. Com. 398-9; Holman v. Johnston, Cowper's Rep. 341; Armstrong v. Toler, 11 Wheat. R. 258; Hannay v. Eve, 3 Cranch R. 242; Dana's Abr. ch. 226, art.

18; Smith v. Bromby, Douglass R. 696, note; 1 Story's Com. on Eq. Jur. 69, 70, and note 1, on p. 70; Boyd v. Barclay, 1 Ala. 34.

The circuit court erred in its charge to the jury, as it would seem, under a misapprehension of the facts. He seems throughout to suppose that George Swink, deceased, or his representatives, were parties to the case, or that his property was to be affected by the result. So far from that idea being well founded, the administrator of Geo. Swink had sold and parted with the property in controversy. It had gone into the possession of Harris, under a fraudulent arrangement between him and Carter—and the question was, not as to the supposed fraud of Geo. Swink, as to whom we were considered creditors at large, but as to the fraudulent conduct of Harris, (as to whom we were judgment and execution creditors,) and his copartner in the fraud, Stephen Carter.

S. Parsons, contra.

The suit was brought, and the judgment recovered after Geo. Swink's death, although the writ was returned executed as to him and the other defendants, who were his partners. Under the *fi. fa.* from that judgment, Geo. Swink's private property was sold, and that is the title under which Snodgrass claims.

The judgment and execution as to Geo. Swink were void. Hood and Stinnett v. Mobile Branch Bank, 9 Ala. 335. And there are other authorities tending strongly to sustain the above. Buchanan v. Rucker, 9 East, 191; Puckett v. Pope, 3 Ala. 554; 13 Wend. 407; 5 J. R. 40; 5 Day's Rep. 527; 15 J. R. 143.

Cabiness claims as assignee of Carter, a bankrupt. It was urged on the trial below, that the sale of Geo. Swink's administrator to Carter was fraudulent. But the bank, if a creditor of Geo. Swink at all, was only a creditor at large, its judgment and execution being void. And a creditor at large cannot contest such a title on the ground of fraud. Gilpin v. Davis, 2 Bibb's Rep. 416; 3 Lit. 14; 4 Monroe, 122; Dunklin v. Wilkins et al. 5 Ala. 199; Wintingham v. Wintingham,

20 J. R. 296; Henry v. Graham, 7 Dev. & Bat. 76; Osborne v. Moss, 7 J. R. 161.

But the bank did not prove that it was even a creditor at large of Geo. Swink, because its judgment and execution were no proof as to him, and there was no other. For this reason the bank had no right to have any charges whatever from the court, or to except to any. It was not in ^a situation to be injured by any charge, or for the want of any.

COLLIER, C. J.—The first charge assumes, that if the slaves were the individual property of George Swink, to entitle the defendant to set up fraud in the sale by the administrator, it was necessary for him to show that the branch bank at Decatur was an execution creditor of Swink, or of one of the mercantile firms of which he was a partner. Conceding that it is not competent for a stranger to gainsay a judgment against a dead man until it is vacated or annulled by a direct proceeding, and still we think that such judgment must be inoperative as against his estate, which has passed to an administrator. The regular grant of administration *eo instanti* invests the personal representative with the assets of the deceased; and they are not subject to seizure and sale under an execution issued on a judgment thereafter rendered against the intestate. This principle of law does not become inapplicable, by proof that the administrator has converted, or fraudulently disposed of the assets committed to him. For mal-administration, he and his sureties incur a personal liability, and there is doubtless some course of procedure, by which, if need be, the misappropriated assets may be reached and devoted by creditors, to the payment of debts. There is then no error in instructing the jury, that the Decatur Bank should have been a creditor of Swink, by execution, when the slaves in question were sold by his administrator, to enable the plaintiff to avail himself of the alledged fraud. The sale by the bank was under an execution issued on a judgment rendered against Swink after his death, and after his administrator had taken possession of, and sold the slaves. Now, although the administrator's sale may have been fraudulent, yet if the bank had no lien by an execution at that time, it could not sell the slaves under its

judgment, obtained after Swink's death, when the administrator's title had vested; and consequently the defendant, who is the vendee of the bank, is not in a condition to alledge the fraud.

2. Conceding that the sale by the administrator, and purchase by Carter were fraudulent, and that Harris and Carter combined in the commission of the fraud, yet the mere fact of Harris being in possession,' would not give him a legal right to hold the slaves as against Carter, who was the purchaser from the administrator. If Carter and Harris had been joint purchasers, and had both combined with the administrator to perpetrate a fraud, and in pursuance of such combination and joint purchase, Harris had taken possession of the slaves, the principle invoked by the prayer for instructions, would perhaps have been applicable. But the charge of the court is not asked upon this hypothesis. It assumes that if there was a fraudulent combination between Carter and Harris to purchase, although Carter may have purchased individually, their fraudulent scheme, which was a matter of joint arrangement, would subject the slaves to the payment Harris's debts, or that Carter could not have asserted a title against him. The maxim *in pari, delicto melior est conditio possidentis*, is certainly a salutary one, but will not admit of such illimitable tension.

In Armstrong v. Toler, 11 Wheat. Rep. 258, it was decided, that where a contract grows immediately out of, and is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it. So if the contract be in part only connected with the illegal consideration, and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it. But if the promise be entirely disconnected with the illegal act, and is founded on a new consideration, it is not affected by the act, although it was known to the party to whom the promise was made, and although he was the contriver and conductor of the illegal act. To the same effect is the opinion delivered by me in Carrington v. Caller, 2 Stew. 175, which, by the division among the judges who participated in the decision, must be regarded as the law of that case.

The prayor for instructions forestalls the inquiries of the

jury upon the point, whether Harris did not hold the slaves under a subsequent contract with Carter, although there is proof in the record tending to show that such was the fact. If this contract was not simulated, but entered into in good faith, there can be no doubt but Carter's title is paramount to Harris's, though there may have been a fraudulent combination between them, which led to the purchase from the administrator. Upon this contract Carter could have recovered without proving his own purchase, by showing Harris's recognition of his title, and undertaking to deliver to him the slaves—all which is abundantly manifest from its terms. He would require no aid from the illegal purchase, and this may be regarded as a fair test of his right to recover.

3. The second charge, or as it is inappropriately called a qualification, of the prayer for instructions, is a substantial reiteration of the first charge, and is consequently unexceptionable. We have but to add, that the judgment of the circuit court is affirmed.