## SHACKELFORD *vs.* KING.

1. In the matter of the settlement of an insolvent estate, an issue having been formed between the executor and creditors, various irregular pleadings were afterwards allowed by the court, and the executor then sued out a writ of error to reverse the judgment rendered against him: *Held*, that the case should be considered as if the parties had been held to the issue which they had first formed, and that the subsequent pleadings and rulings of the court should be disregarded.

2.  Prior to the passage of the act of 1843, two joint executors filed "a statement of the condition of the estate" or their testator, showing an excess of debts over personal assets, which was received by the court, and ordered to be recorded, the order reciting that the estate appeared to be insolvent; and the real estate was afterwards sold, as in cases of insolvent estates: *Held*, that this was sufficient to give the court jurisdiction of the estate as insolvent, and that it should be so settled.

3.  Since the passage of the act of February 11, 1850, if the settlement of an insolvent estate is transferred from the Probate to the Circuit Court, on account of the incompetency of the prob ate judge to preside in the case, the latter court should not appoint commissioners to settle the. estate, but should proceed with the case as the former would have done.

4.  When an executor becomes surety on a note given for property purchased at a sale made by himself and his co-executor, and, the estate becoming insolvent, he is cited by his co-executor, on behalf of the creditors of the estate, to make final settlement and account for the note, he cannot protect himself by a plea of the statute of limitations of six years.

5.  As to his raising the objection that no sufficient notice of the settlement had been given.

6.  On the trial of an issue between the executor and the creditors of an insolvent estate. a note may be given in evidence without any proof of its execution, if its execution is not denied by the plea of *non est factum*.

Error to the Circuit Court of Shelby.

Tried before the Hon. John D. Phelan.

This was a proceeding on the part of Edmund King, one of the defendants in error, on behalf of himself and others as creditors of the estate of Job Mason, deceased, against Jack Shackelford, the plaintiff in error.   Said King and Shackelford were the executors of the last will and testament of Mason, letters testamentary having been granted to them, in 1827, by the Orphans' Court of Shelby.   They seem to have acted conjointly, until 1829, when Shackelford removed to Lawrence County; and after that time King seems to have carried on the business of the estate alone. They jointly rendered an inventory of the estate, obtained orders to sell the personal property, and made the sales; on the 16th of April, 1828, they filed a "statement of the condition of the estate," showing assets to the amount of $4169 43, and debts presented against the estate amounting to $4816 86; these assets, however, are shown to consist of the proceeds of sales of personal property unsold appraised at $1604 37.   This report was received by the court, and ordered to be recorded; and

on it was predicated an order to sell the real estate, which was afterwards sold, the proceeds amounting to $642 25.

At one of the sales by the executors, it seems that one Robert J. Farrell purchased property to the amount of $515, and executed his note for the payment of the purchase money, with Jack Shackelford, one of the executors, as his surety. The note is as follows:

"$515. On or before the first day of January next, we or either of us promise to pay Edmund King and Jack Shackelford, executors of Job Mason, deceased, five hundred and fifteen dollars, for value received, February 9th, 1828.

ROBERT J. FARRELL.

JACK SHACKELFORD."

The administration of the assets of the estate seems to have been mostly under the conduct and control of King, particularly after Shackelford's removal from the county in 1829. After all, or nearly all, of the other assets had been administered, King attempted to collect the above described note on Farrell. He obtained a judgment at law against Farrell, on which an execution was issued, and returned "no property found." He then instituted a suit at law against Shackelford, as surety on the note, but failed to obtain judgment. Afterwards proceedings in chancery were instituted, to effect the collection of the note, but without success.—See the report of the case (King v. Shackelford) in 6 Ala. 423.

Various orders were made in the matter of the estate, from 1829 to 1833; and at the March term, 1833, the following order was made: "The judge of the County ———— having, previous to his appointment to said office, been employed as counsel by persons having claims against the estate of Job Mason, deceased, it is ordered that the said cause be transferred to the Circuit Court of Shelby."

On the 12th of May, 1846, King, as one of the creditors of the estate of Mason, and as one of the executors, filed his petition in the Orphans' Court of Shelby, praying that said Shackelford, as one of the executors, be called to settle his accounts, and that he be charged with the amount of Farrell's note and interest. To this petition Shackelford filed his answer on the 4th of December, 1846, denying any

Shackelford v. King.

assets in his hands and all liability whatever; and on the 13th of May, 1848, another answer seems to have been filed by him, to nearly the same effect.

At the December term, 1846, for the purpose of defeating King's petition, Shackelford's counsel appeared in court, and insisted that said court, in consequence of the said order of transfer, made at the March term, 1833, had no jurisdiction to proceed further in the cause; and he moved to dismiss the said petition, insisting that the Circuit Court only had jurisdiction of the cause. The court sustained the motion, and dismissed the petition; but its decision was afterwards reversed on error by the Supreme Court.— See King v. Shackelford, 13 Ala. 436.

The cause having been remanded for further proceedings, the first day of June, 1848, was appointed for its hearing.— On that day the parties appeared; and King, by his counsel, filed a replication to Shackelford's answer, insisting that he was liable to be charged with the amount of said note. To this replication, Shackelford, by his attorney, demurred, and the demurrer was sustained; and, as the record states, "the creditors then take issue on the answer." After this, "Shackelford demurs to the petition, to which the petitioners object; objection overruled, and demurrer sustained by the court. Filed in office, June 1, 1848." After this, but at the same term, a plea of the statute of limitations is put in; to which a demurrer is interposed, and sustained by the court. The next paper in the record is an account current, filed by said King, on the first of June, 1848, "showing his management of the estate from December, 1840, up to this day."

The record next sets out a notice to Shackelford's attorney of record, that on the second Monday in March, 1849, said King will move the Orphans' Court "for a final judgment, *nunc pro tunc*, in settlement of the matter of plaintiff's petition for himself and the creditors of the estate of Job Mason, deceased, against the said defendant, said King being a creditor of said estate"; and "that all steps will then be taken for a final determination of said matter." This notice is dated February 25th, 1849, and was returned executed.

On the 12th of March, 1849, the following judgment *nunc pro tunc*, as of the first of June, 1848, is entered: " Came

the parties by their attorneys, and Jack Shackelford filed his answer, denying any assets in his hands as executor of Job Mason, deceased ; to which answer Edmund King, as a creditor, replied ; to which replication Shackelford, by attorney, demurred ; which demurrer is sustained by the court, and it is here ordered that the same be sustained.— Said Shackelford then offered to demur to King's petition, asking for a settlement of testator's estate ; to which King objected, but which was permitted by the court ; and the same being heard and understood by the court, it is ordered, adjudged and decreed, that said demurrer to said petition be sustained by the court, and that said Shackelford go hence, and recover of said King his costs about his suit in this behalf expended, for which let execution issue ; and this judgment is rendered as of said 1st June, 1848. Then King, as executor, filed his accounts and vouchers, which are received by the court," &c.

On the second Monday in June, 1850, on motion of King's attorney, " the case is taken up ; and the judge of the court having been of counsel in the case, for plaintiff, before his election to this office, it is ordered by the court, that this cause be transferred to the Circuit Court of Shelby" ; that a certified copy of all the orders made in the cause be sent up to the Circuit Court ; and that Shackelford, or his attorneys, have notice of the order. A copy of this order was executed on Shackelford's attorney, on the 14th of June, 1850.

On the trial in the Circuit Court, as appears from the bill of exceptions, "the defendant objected that the court could not proceed with the cause at the present term, for the following reasons : 1st, that it does not appear from the record that any sufficient notice of this settlement has been given, by publication, or otherwise ; 2d, that it does not appear that any citation has issued to Shackelford, to appear and settle his accounts ; 3d, that the court is bound by law to appoint commissioners to settle the estate ; and, 4th, that the court has no jurisdiction of the cause ; and in support of his several objections, he read the record of the proceedings from the Orphans' Court in this cause, and the papers in the cause ; and the court overruled the said several objections,

and proceeded with the cause; to which Shackelford excepted.

"The hearing of the cause then proceeded; and King introduced, in support of his claim against the estate, all the decrees in the cause heretofore made; to which the defendant objected, on the ground that said proceedings appeared on their face to be *ex parte*, without lawful notice to the parties concerned, and that the court had no. jurisdiction. to make said several orders separately. The court overruled the objection, and the defendant excepted.

"The plaintiff then offered, in further support of his claim, a note made to him, purporting to have been made by Job Mason in his life time, without any proof of its execution aside from the production of the paper. To the sufficiency of this proof the defendant objected; the court admitted the note in evidence, and defendant excepted. The plaintiff then offered in evidence the said note of Farrell's, on which said Shackelford was surety, without any proof of its execution aside from the production of the paper. The defendant objected to the admission of the evidence, on the ground that the proof was not sufficient to authorize the reading. of the note in evidence; but the court overruled the objection, the note was read, and defendant excepted.

"The court then, on motion of the plaintiff, King, suffered him to make affidavit of the justness and validity of his claim against Mason's estate, and that the same was unpaid, except as shown in the petition and record. The defendant then claimed three months' time, in which to contest this claim; but the court required him to contest immediately, and defendant excepted. The defendant then contended, that the estate had never been declared insolvent by the court, and that the court had no power now to proceed to settle it as an insolvent estate; and he read, in support of his objection, all the papers and orders of the Orphans' Court in this cause. The court overruled the objections, and proceeded to decree as in cases of insolvent estates; to which defendant excepted. The defendant then objected, that there was no sufficient proof of any claim .against the estate, and that the creditors had not proved their claims, and that none of the claims against the estate had ever been

legally proven; these objections were severally overruled by the court, and defendant excepted. The defendant then proved by Edmund King, while he was on the stand as his own witness, that he had never presented the note of Job Mason to defendant, as a co-executor of said estate, for payment, and defendant moved the rejection of said claim; but the court overruled the objection, and defendant excepted. The court then proceeded to render the decree found in the record; to which defendant objected," &c. This decree condemns Shackelford to pay the amount of said note, and orders the proceeds to be divided *pro rata* among the creditors; and a judgment is entered in favor of each creditor, for his specific amount.

The errors assigned are as follows:

1. The court erred, in settling the estate as an estate declared insolvent;

2. The court erred, in assuming jurisdiction of the case, after it had been finally disposed of in the Orphans' Court, by its decree entered *nunc pro tunc* on the 12th of March, 1849;

3. The court erred, in refusing to appoint commissioners to settle the estate;

4. The circuit judge had no jurisdiction to settle the case in the manner in which he has settled it;

5. The court erred, in the decree rendered in the cause, and in awarding execution;

6. The court erred, in sustaining a demurrer to the plea of the statute of limitations to King's petition;

7. The court erred, as appears from the various matters of the bill of exceptions.

RICE & MORGAN, for plaintiff in error:

The Circuit Court should have sustained the objection to its jurisdiction: as against Shackelford, who was the defendant sought to be charged, that court had no jurisdiction. The order of the Orphans' Court *nunc pro tunc*, at the March term, 1849, was a final discharge as to Shackelford; it was a judgment "that said Shackelford go hence, and recover of said King his costs." This put an end to the power of the court over him. Hale v. Walker, 16 Ala. 26,

Immediately following this final judgment, is an *ex parte* entry, reciting that the case was "pending" in said court, and that the judge of said court had been of counsel for King before his election, and ordering the transfer of the cause to the Circuit Court.—King v. Shackelford, 13 Ala. 436. This order is void, because, first, the case had previously been finally decided ; secondly, because it shows on its face that Shackelford had no notice of such "proceeding" (McCurry v. Hooper, 12 Ala.) ; thirdly, because the act of 1850 (Pamph. Acts 1850, p. 36, § 40) does not authorize such transfer in such cases : that section enacts, "that no judge of probate shall act upon the determination of any cause or *proceeding*, or take jurisdiction of any matter in which he is interested, * * * or in which he shall have been of counsel, * * * unless by the consent of the parties concerned ; but in such cases, (that is, where the judge has been of counsel, and the parties will not consent to his taking jurisdiction,) the cause or proceeding shall be commenced, or transferred, as the case may be, to the Circuit Court." Now an order transferring a cause to another court, is obviously a "proceeding;" and the statute forbids such transfer without notice to "the parties concerned." Else why are the words, "unless by consent of the parties concerned ?" How could they consent, without first having notice. There was no law, prior to the act of 1850, authorizing a probate judge to transfer a cause to the Circuit Court ; and the act of 1850 does not authorize the transfer, "unless by consent of the parties concerned." Such cases as may be transferred under the act of 1850, must be transferred by "consent of the parties concerned," or by an order of the Circuit Court itself, upon proper application and notice.

But when "such cases" are transferred properly, the Circuit Court can only take jurisdiction of them, and proceed therein, as the Probate Court might have done.—Acts of 1850, p. 36, § 40. Clay's Dig. p. 305, § 46, shows how the Probate Court should have proceeded. There is nothing in the record, which could authorize either court to settle this estate as an insolvent estate. The executors have never "represented," nor "reported," the estate to be insolvent ; and it is certain that a record, or report, or representation, is inadmissible and insufficient to prove any fact which can only be inferred from it by argument.

McCravey v. Remson, 19 Ala. 430. The report or represen-
tation of insolvency cannot be even inferred by argument from
this record, when the statutes in force prior to 1843 are regar-
ded. The statement of the condition of the estate, which is
relied on as a report of insolvency, only relates to personal
estate ; it speaks of a portion of that personal estate, appraised
at $1,604 37, as not sold; it does not say there is no real
estate ; nor does it say that the personal estate is not worth,
and will not bring, a much larger sum than $1,604 37 ; it does
not aver that the claims against the estate are believed by them
to be *bona fide* or subsisting, but speaks of them as " demands
presented against said estate, $4,067 36 ;" it does not aver or
state that the estate is insolvent.—Aikin's Digest (2nd ed.)
151 § 2 ; Clarke v. West, 5 Ala. 126 ; Lambeth v. Garber,
6 Ala. 870.

Again ; the record shows that the estate owned lands, which
the executors had power to sell under the will ; that these lands
were not included in the aforesaid statement of the condition of
the estate ; that this statement was not made or intended as a
report of insolvency, but merely to get an order to sell the real
estate, on the ground that the claims presented exceeded nomi-
nally the personalty sold. This was not a good ground for an
order to sell the lands under the act of 1822 ; but the object
and intent was, to get such an order of sale. The statement is
dated *April* 16, 1828 ; while the bond of the executors is dated
*June* 2, 1828, and shows that they had obtained an order to sell
the lands. The value of the lands owned by the estate is not
hinted at.

But a mere report of insolvency, without more, could not
authorize the Circuit Court to treat the estate as insolvent,
and settle it as such : the Orphans' Court must have ascertained
the fact of insolvency, after a report of insolvency was filed,
before the Circuit Court could have settled the estate as insol-
vent.—Hollinger v. Holly, 8 Ala. 456.

Even if the estate had been duly reported and declared in-
solvent, prior to 1843, the court erred in allowing King " to
make affidavit of the justice and validity of his claim against
Mason's estate, and that the same was unpaid," as is expressly
decided in Askew v. Weissinger, 6 Ala. 907 ; see, also, Martin
v. Baldwin, 7 Ala. 923.

The case between Shackelford and King, in 13 Ala., shows that King proceeds only as a creditor, and is only entitled to share in the demand. On the petition of King as creditor, the court had no power to decree in favor of others.

B. T. POPE, *contra :*

The first assignment of error is not well taken, because the estate was declared insolvent on the 16th of April, 1828, on the joint report of the two executors. The report is signed by both, and sworn to by King. These proceedings, and the order thereon, are regular ; and they were had at the instance of the executors, who cannot complain. Even if Shackelford had not participated, he would have been bound, as to creditors, by the acts of his co-executor.—Williams and Joy, ex'rs, v. Sims, 8 Porter 579 ; Crothers v. Heirs of Ross, 17 Ala. 816 ; Watts v. Gayle & Bower, 20 Ala. 825. The statute in force in 1828 did not require the executor to " report the estate insolvent "· in terms, but merely " to exhibit to the court a just and true account," &c.—Aikin's Dig. 151 § 2.

The second and third assignments are not good, because there is no law requiring the appointment of commissioners. The statute of 1850 requires that the Circuit Court "shall take jurisdiction of, and proceed therein, as the Probate Court might have done." The presiding judge is, for this purpose, the court.— Clarke v. West, 5 Ala. 126.

The fourth assignment cannot be sustained ; or, at any rate, Shackelford cannot complain, if all the other parties are satisfied. The record shows that he frequently appeared, in person and by attorney, and made several motions.

As to the fifth assignment : The decree is regular in adjudging that the creditors recover of Shackelford the aggregate amount found to be due from him to the estate, to be distributed *pro rata* to each creditor. The awarding of execution was mere surplusage ; and even this was not irregular.

As to the sixth assignment : Shackelford cannot be heard to complain that notice of the settlement was not given, or that he was not cited ; after he is once in court, he is presumed to be cognizant of all subsequent proceedings.—5 Ala. 117; 20 *ib.* 825. Nor can he complain of any irregularity as against the creditors. As the heirs and creditors do not complain, it is im-

material to Shackelford how the fund in his hands is distributed. None of "the parties concerned" are complaining.

It was not necessary to prove the execution of Shackelford's note, because there was no plea of *non est factum* ; nor was there any denial of indebtedness on this note.   As the record shows that Shackelford had notice of all the claims against the estate, it cannot be contended that it was necessary for King to present his claim to Shackelford.—Acre v. Ross, 3 Stew. 288.

GIBBONS, J.—The merits of the petition filed by the defendant, King, praying that the plaintiff in error be cited to a final settlement as one of the executors of Job Mason, deceased, were settled when this case was in this court on a former occasion.—*Vide* King v. Shackelford, 13 Ala. 436.   The judgment of the court below, then under revision, was one dismissing the petition of King, on the ground that, in 1833, an order was made by the Orphans' or County Court of Shelby, removing the cause to the Circuit Court of said county, because the then presiding judge had been of counsel in the case.   This order, according to the decision of the Orphans' Court, deprived the Orphans' Court of all jurisdiction in the matter.   But the Supreme Court decided this to be a void order, and that the jurisdiction of the Orphans' Court was unaffected by it.   In making the decision, however, the court express their opinion as to the merits of the petition, and decide that it is well filed. This relieves us from any further discussion of the merits of this petition.

Before proceeding to the consideration of the points presented by the present record on the assignment of errors, we deem it necessary to remark, that much embarrassment seems to have arisen in the progress of the cause from an apparent disregard of legal principles, as shown by some of the decisions upon the subject of pleading in the court below.   In the first place, we deem it quite absurd to apply to the pleadings in the Orphans' Court either the technical rules or terms of the common law pleadings ; and in the second place, in their application as shown in the present record, there would seem to be an entire misapprehension of their meaning.   To show this, it is only necessary to refer, for one moment, to the history of what, in a suit at common law, would be called pleading, but which in the present

proceedings is certainly anomalous. To the plaintiff's petition, regularly filed, setting out fully the ground of his claim against the defendant, and calling upon him to answer and make final settlement, the defendant comes in and answers, denying all assets in his hands and his liability to account to the plaintiff, or to the creditors, for anything in his hands or for anything whatever. At this point there is no difficulty, as the parties are fairly at issue, and it rests for the court to decide the matter of contest between them. But neither party seems satisfied with this state of the pleadings, and the plaintiff files what he calls a replication to the defendant's answer, in which he avers simply what he has already averred in his first petition, viz., that the defendant is liable to account for the amount of the Farrell note, as security thereon, he being co-executor of the last will and testament of Mason, deceased. To this replication the defendant demurs, after having, by his previous answer to the petition, admitted the legal sufficiency of the same facts therein alleged, and forming therein the gist of the whole petition; and (strange to say) the court, with the opinion of the Supreme Court expressed directly upon this point before it to the contrary, sustains the demurrer to the replication. The plaintiff then takes issue upon the defendant's answer; and we should naturally suppose that the trial would now proceed, as the parties are once more at issue, and precisely where they were when the defendant filed his answer to the petition; but no! the defendant now demurs to the plaintiff's petition, and (strange to say) the court sustains the demurrer, thus overruling, for the second time, the decision of the Supreme Court expressed in that very cause, and with the decision before it. After all this, when, according to the ordinary understanding of the terms of pleading, there was no cause in court, the defendant pleads the statute of limitations, to which a demurrer is filed, and the demurrer sustained by the court.

Of this jumble of legal verbiage—this misapplication of legal technicalities—we can make nothing. In the discussion of the various points presented by the record, we have resolved to do what the Orphans' Court should have done, viz., hold the parties to the issues which they have made, and disregard everything in the shape of pleading that has arisen subsequent to the formation of such issues. After the petition was filed, and the

12

answer thereto, the parties were at issue, and the Orphans' Court should have disregarded and stricken out everthing in the shape of pleading, arising after that time, that is shown in the present record, as soon as it arose, until the answer of the defendant had been withdrawn. The duty of the Orphans' Court was, to inquire into the facts alleged in the petition; and even whether the answer of the defendant was formally filed or not, could make but little difference, except, that by so filing his answer, he admitted the legal sufficiency of the petition, and while such answer remained he could not be heard by way of demurrer.

The first assignment of error is, that the court erred in settling the estate as one declared insolvent.

This assignment of error, in our opinion, is not well taken.— It appears, by the record, that the executors, both King and Shackelford, as long ago as the 16th of April, 1828, made a report of the assets and debts of the estate, by which it appears that the assets were $4169 48, and the debts $4816 86 ; and on the same day the court accepts the report, in which, says the court, " it appears that the estate is insolvent," and orders that the report be recorded. At the same time it proceeds, as in an insolvent estate, to take the legal steps for the sale of the real estate of the decedent. This, according to the law as it then stood, was all that was necessary to give the court jurisdiction of an estate as insolvent; and having once obtained jurisdiction, it would retain it until it was finally settled, or at least until all the debts were paid and the estate shown to be solvent.

But it is insisted, in the second assignment of error, that the court erred in taking jurisdiction of the cause, after it had been finally disposed of by the entry *nunc pro tunc*, of the 12th of March, 1849, of the judgment upon the demurrer to the petition, as of the first of June, 1848 ; and as this demurrer put an end to the whole proceeding, therefore, after this judgment was formally entered *nunc pro tunc*, there was no longer any case in court. The remarks which we have already made as to the pleadings in this cause, we deem a sufficient answer to this assignment of error. The entry of this judgment *nunc pro tunc*, was, at best, but part and parcel of the jumble of legal technical terms which are so abundant in this case. We

have already stated, that we should disregard entirely all the show of pleadings after the parties were at issue, and this judgment is only an extension of what should, in the state of the record at the time it was rendered, never have had a beginning.

It is also assigned for error, that the court did not appoint commissioners to settle the estate. As we construe the act of 11th of February, 1850, it was not the duty of the circuit judge to appoint such commissioners. Under the law, as it stood prior to the passage of this act, it would have been the duty of the Circuit Court to have appointed commissioners; but the language of the act is : "And said court shall take jurisdiction of, and proceed therein, as the Probate Court might have done." This language we deem clear and unequivocal. It is simply the substitution of the circuit for the probate judge; and in such cases, the Circuit Court becomes, for the time being, a Probate Court, and should, in all respects, be governed by the rules operating upon the Probate Court.

The fourth and fifth assignments of error, that the court had no jurisdiction to settle the estate in the manner in which it did, and that the court erred in the decree which it rendered in the cause, we do not deem it necessary to notice, except to remark, that we consider them as covered by what we have already said or shall hereafter say in the progress of this discussion.

To the sixth assignment of error we have but to remark, that we do not consider that the statute of limitations of six years applies to the case presented by the plaintiff's petition, and the demurrer to it was therefore properly sustained.

The seventh and last assignment of error presents the various matters exhibited by the bill of exceptions. It seems that, at the threshhold of the trial of the cause in the Circuit Court, the defendant made four objections to proceeding with the trial, to-wit : 1st, that it did not appear from the record that any sufficient notice of the settlement had been given, by publication or otherwise ; 2nd, that no citation had issued to Shackelford to appear and settle his accounts ; 3rd, that the court was bound to appoint commissioners to settle the estate ; 4th, that the court had no jurisdiction of the cause.

With regard to the first of these objections we have to

remark, that this case had been pending in court since 1846, and the defendant had had an abundance of time to take all necessary steps to call in the creditors of the estate and other persons interested therein. When an executor goes into court to settle his accounts, it is his duty to see that the proper steps are taken to give the necessary notices. The record shows no effort on the part of the defendant to give the legal notices, and he would not be heard to make the objection on the trial that he had not done his duty. Besides, in the situation in which this defendant presents himself before the court, we do not regard his position as one to which the ordinary rules as to notice would be applicable. He is not the sole executor, nor is he called before the court but for a single purpose, viz., to pay in the amount of the note, as to which the other and active executor has no other means for the enforcement of its collection. Besides, the estate is an insolvent one, and all the creditors are parties to the proceeding; if they are satisfied with the notice given, whatever it may have been, or if there was none at all, it does not lie with the defendant to make the objection.

. As to the second objection, it is sufficient to say, the defendant answered the petition of the plaintiff on two several occasions, viz., once on the 14th of December, 1846, and again on the 13th day of May, 1848. These answers, independent of two notices found in the record, one served on him and the other on his counsel, by the sheriff, and citing him to appear before the court and settle his accounts, we think preclude him from saying that he has not been cited to settle his accounts. Besides, that is a novel objection for a man to make, in person or by counsel, in open court on the trial.

As to the third and fourth objections, they have already been disposed of by what has been already said in the preceding remarks.

We see no error in the court's looking at the papers in the cause on the trial, nor in allowing the plaintiff to offer in evidence the note of Job Mason, due to himself, without proof of its execution. Nor was there error in allowing the note to be read in evidence, on which the defendant is sought to be charged, without proof of its execution. The execution of neither of these notes could be denied, without being put in issue by the proper plea. Nor was there error in the court's compelling the

Shackelford v. King.

defendant to contest the plaintiff's claim immediately, if at all. It surely would have been most extraordinary, if, after the trial was in part concluded, the defendant could, for the first time, raise an objection to the justice of the plaintiff's demand against the estate of Mason, and have allowed to him then three months more for the purpose of contesting the same. The court was right in proceeding with the trial.

The defendant then contended, that the estate had never been declared insolvent, and objected to proceeding further for that reason. This objection has already been disposed of by what has already been said upon this subject.

"The defendant then objected that there was no sufficient proof of any claims against the estate, and that the creditors had not proved their claims sufficiently and legally." We have already seen that the plaintiff had sufficiently proved his claim, and if he did not object as to the degree of proof of the other creditors, and none of the creditors made any objections, we see no reason why the defendant should be allowed to make any.— Besides, it is not stated what the proof was, which was made by the creditors, other than as to that offered by the plaintiff, and, therefore, it is impossible for us to say whether the proof was sufficient or not. This view is at once sufficient to show that there is no error apparent from this ruling of the court below.

The defendant then proved, by the plaintiff, that his particular demand had never been presented to him as co-executor, and on that account moved the rejection of the plaintiff's claim. The court overruled this objection, and we think very properly. On referring to one of the early schedules of the debts of said estate, filed in the Orphans' Court by the plaintiff and defendant, as co-executors of the last will and testament of Job Mason, deceased, we find this claim of the plaintiff therein in the schedule, and the same is signed by the defendant as one of the executors. This was as long ago as 1828. No objection seems to have been made to the plaintiff's demand, from that time to the present, and yet the defendant has been all the while the co-executor of the estate. We think it is now too late for the defendant to deny that the claim had been presented to him; in other words, that his acts in the premises estop him from denying such presentation.

We have but to add, that we find no error in the record of

which the defendant can complain, and the judgment of the court below is affirmed.

Ligon, J., not sitting.