[Lewis *v.* Wells.]

# Lewis *et al.*, executors, etc. *v.* Wells *et al.*

*Real Action in Nature of Ejectment, by Executors of Purchaser at Mortgage Sale, against Mortgagor.*

1. *Sale by administrator of deceased mortgagee, under power in mortgage.* — Where a mortgage of lands contains a power of sale by the mortgagee, "his heirs, and assigns," on default being made in the payment of the secured note; and the mortgagee dies, leaving the unpaid note as assets of his estate; the power of sale may be exercised by his administrator, if not by the terms of the mortgage itself, certainly by virtue of the statute.  Rev. Code, § 1589.

2. *Conveyance to executors of deceased purchaser at mortgage sale.* — On the death of the purchaser at a sale made under a power contained in a mortgage, without having completed the purchase, his executors may pay the purchase-money, and take a deed to themselves as executors, in trust for the persons interested in the estate; and on the title conveyed by such a deed they may recover in ejectment against the mortgagor.

3. *Memorandum of sale by auctioneer.* — A memorandum of a sale made under a mortgage, by an agent who also acted as auctioneer, and indorsed on the mortgage, in these words: "The within property was this day sold by me, as agent of G. M F., as administrator of the mortgagee, J. P. F., deceased, for $2,300, at public auction, to E. Davis, March 23, 1869," signed by the said agent, contains a substantial compliance with the requisitions of the statute of frauds.  Rev. Code, § 1863.

4. *Who may object to defective memorandum of sale by auctioneer.* — Only the parties to the sale can take advantage of any defects or irregularities in the memorandum made by the auctioneer; and if they complete the sale without objection, by payment of the purchase-money, and execution and acceptance of a deed, it does not lie in the mouth of the mortgagor, whose lands were thus sold under a power contained in the mortgage, when sued by the purchaser, to object to the sufficiency of the memorandum made by the auctioneer, or to the fact that the mortgagee's agent acted as auctioneer at the sale.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. WM. S. MUDD.

This action was brought by the appellants, suing as the executors of the last will and testament of Edward Davis, deceased, against Abner J. Wells and others, to recover the possession of certain lands, which were particularly described in the complaint, and which the plaintiffs claimed under a purchase by their testator at a sale made on the 23d March, 1869, by George M. Figh, as the administrator of John P. Figh, deceased, under a power of sale contained in a mortgage executed to said John P. Figh, by said Abner J. Wells, to secure the payment of two notes given in part payment of the purchase-money of said lands. In consequence of the ruling of the court below, excluding from the jury the whole of the plaintiffs' evidence, on the ground that it did not show any title in them on which they could maintain the action, the plaintiffs were compelled to take a nonsuit; which they now move to set aside, assigning as error the ruling of the court on the evidence, to which they reserved a bill of exceptions. The material facts of the case were thus stated by the Chief Justice: —

[*Lewis v. Wells.*]

" PETERS, C. J.— On the trial in the court below, the plaintiffs showed, by evidence to which there was no objection, that on or about January 7, 1863, one John P. Figh sold and conveyed to said Abner J. Wells the lands in controversy, for the sum of $10,000 ; of which half was paid at the sale, and the balance secured by two notes, each for $2,500, falling due in one and two years after date. To secure the ultimate payment of these notes, Wells reconveyed the lands mentioned to said Figh by mortgage. The first note that fell due was paid. John P. Figh then died, intestate, and left the second note unpaid, and the mortgage unsatisfied. George M. Figh was then duly appointed and qualified as the administrator of the estate of said John P. Figh, deceased. After his appointment as above said, said administrator employed Burwell B. Lewis, as an attorney-at-law, to collect said note still remaining unpaid, with instruction to 'foreclose the mortgage' aforesaid. On the 23d day of March, 1869, Lewis, acting in his capacity as attorney aforesaid; after due advertisement, caused said lands to be sold under the power of sale in said mortgage. At this sale, the lands were bid off by one Nabors, for Edward Davis ; but, before any title was made to Davis, he departed this life, leaving a will, which was properly proven and admitted to probate. By his will, Davis appointed said Lewis and said Lyman, the plaintiffs in this suit, his executors. They accepted the trust thus conferred, and duly qualified as such. Thereupon, said George M. Figh, as the administrator of said John P. Figh, deceased, conveyed to them, by proper instrument in writing, such title to the lands aforesaid as passed by the said sale made under the power of sale in said mortgage on the said 23d day of March, 1869, as above said. This deed bears date January 20, 1870. In this deed, said administrator acknowledges the payment of the purchase-money for which said lands were sold at said sale under said mortgage on said 23d day of March, 1869 ; and the lands named in said deed are conveyed to said Lewis & Lyman, 'to have and to hold said lands, hereditaments, and premises hereby granted, unto said parties of the second part, in their representative capacities as aforesaid, forever.' In the premises of said deed, said Lewis & Lyman are described as the parties of 'the other' or second part, and 'as the executors of the last will and testament of Edward Davis, late of said Shelby county, now deceased, in trust, and for the use and benefit of the heirs and legatees under said will, and of those who as creditors are interested in the estate of said Edward Davis, deceased.' It also appears that the sale on the 23d of March, 1869, was conducted by Lewis as the attorney of the administrator of Figh, and that he acted as auctioneer to cry the sale and receive the bids ; and that after the sale, he

[Lewis v. Wells.]

made a memorandum of it in writing on the mortgage, and signed it with his name; but I do not mention this latter fact because I deem it of any importance in the case. It seems, also, that Davis died about the 17th day of April after the sale, but without paying the money for the lands (which were sold for cash), and without receiving a deed; but the money was paid by his executors, and the deed made to them, as above shown."

WATTS & TROY, with whom were R. W. COBB and B. B. LEWIS, for the appellants. — 1. On common law principles, the personal representative of the deceased mortgagee may execute a power of sale contained in the mortgage. A mortgage is but a security for a debt, and a transfer of the debt is a transfer of the mortgage. The estate of the mortgagee is a mere chattel interest, which, on his death, vests in his personal representative, and does not descend to his heirs. The power of sale is a power coupled with an interest, which is not extinguished by the death of the mortgagee, but survives in favor of any one who is authorized to collect the debt. 4 Kent, 160–61; 1 Hilliard on Mortgages, §§ 1, 5, 8, 50, 68, 69; *Emanuel & Gaines* v. *Hunt*, 2 Ala. 191; *Duval* v. *McLosky*, 1 Ala. 708; *Cullum* v. *Irwin*, 4 Ala. 452; *Center* v. *P. & M. Bank*, 22 Ala. 743; *Graham & Rogers* v. *Newman*, 21 Ala. 497; *Jencks* v. *Alexander*, 11 Paige, 619.

2. If there was any doubt as to the right of the administrator, as the assignee in law of the mortgagee, to execute the power of sale on common law principles, the statute settles the question. Rev. Code, § 1589. It would be a very singular construction of the statute, which, while denying the right of the mortgagee's personal representative to execute the power, would confer it on the personal representative of his assignee.

3. The executors of Davis, the deceased purchaser at the mortgage sale, might lawfully pay the purchase-money, and take a conveyance of the land to themselves as executors, in trust for all the persons interested in the estate. Under our statutes, the personal representative of a decedent may recover the possession of his lands, to the exclusion of the heir, and may also recover the rents accruing either before or after the death of the decedent. *Harkins* v. *Pope*, 10 Ala. 493; *Golding* v. *Golding*, 24 Ala. 122; *Patton* v. *Crow*, 26 Ala. 426; *Boynton* v. *McEwen*, 36 Ala. 348; *Tarver* v. *Smith*, 38 Ala. 135. When a conveyance of lands is made to an executor or administrator, in his representative character, he may maintain that title either at law or in equity. *Russell* v. *Irwin's Adm'r*, 41 Ala. 292–302; *Wilkins & Smith* v. *Sorrelles*, 45 Ala. 272; *Hawkins* v. *Hudson*, 45 Ala. 482.

4. The statute of frauds has nothing to do with the case.

[Lewis v. Wells.]

The parties to the contract of sale were satisfied with it, and executed it in full; and no other person can be heard to complain of any irregularities in it.

5. This court will not consider any objections to the evidence which were not raised in the court below. Authorities cited in Shepherd's Digest, 571, § 141.

JOHN T. HEFLIN, contra. — 1. The administrator of the deceased mortgagee had no right to execute the power of sale contained in the mortgage, either by the terms of the instrument itself, or under the statute. The power is expressly confined to the mortgagee, "his heirs, and assigns;" and on his death, without having executed the power, it descended to his heirs, and could only be divested by a judicial proceeding to which they were parties. The statute (Rev. Code, § 1589) does not, by its terms, apply to the case; and being in derogation of the common law, it cannot be extended by construction. If the administrator had no right to sell, his deed could not convey any title to the purchaser.

2. Lewis was authorized and instructed to "foreclose the mortgage," not to sell without a foreclosure. Foreclosure is a proceeding in chancery, to which the mortgagor is a party, and by which his equity of redemption is forever barred. 1 Bouv. Law Dic., tit. Foreclosure. A court of equity will entertain a bill to foreclose, although the mortgage contains a power of sale. Carradine v. O'Connor, 21 Ala. 573; Life Ins. & Trust Company v. Pettway, 24 Ala. 544. The sale made by Lewis, then, being without authority, did not pass any title.

3. The authority under which Nabors bid the land off for Davis was given on Sunday, and was void for that reason. Shipley v. Easterwood, 9 Ala. It was, moreover, by parol; and Nabors never signed any note or memorandum of the contract.

4. Lewis was the agent of the vendor, and could not act as the auctioneer, or as the agent of the purchaser. Story on Agency, § 211.

5. The signing of the note or memorandum must be authorized by writing. Knox v. King, 36 Ala. 370; Hutton v. Williams, 35 Ala. 514.

6. The memorandum indorsed on the mortgage by Lewis was not a sufficient compliance with the statute of frauds. It does not state the terms of the sale, and does not describe the property sold. The reference to the deed in the mortgage, for a description of the property, speaks of the deed as recorded in the probate judge's office, while the deed produced in evidence was never recorded. Under the statute, recourse cannot be had to parol evidence to connect the deed with the mortgage. King v. Knox, 36 Ala. 370; Hutton v. Williams, 35 Ala. 503;

[Lewis v. Wells.]

*Robertson* v. *Garth*, 6 Ala. 204; *Adams* v. *McMillan*, 7 Porter, 73; *Carroll* v. *Powell*, at June term, 1872.

7. The only title acquired by Davis by his purchase, if any, was an imperfect equity, which, on his death, descended to his heirs. His executors could not, by any act of their own, become the repositories of the legal title after his death. *Pond* v. *Wadsworth*, 24 Ala. 543; *Earl* v. *Halsey*, 1 McCarter's (N. J.) R. 334; *House* v. *Dennett*, 9 Mich. 246. The heirs and creditors of Davis take nothing by the deed. The description of the intended beneficiaries is vague and uncertain. *Turner's Adm'r* v. *Dupree*, 19 Ala. 198; *Joseph* v. *Joseph*, 5 Ala. 280. The executors cannot have a better title to the land than their testator had at the time of his death.

PETERS, C. J. — This record raises the sole question, whether the administrator of Figh, deceased, could pass the title to the lands in question to the plaintiffs, by a sale under the power in the mortgage, after the death of the mortgagee. If he could, then the title of the appellants, who were plaintiffs in the court below, is sufficient to maintain this action. If he could not, then the ruling of the court below was without error, and the judgment should be affirmed.

In this State, the rules of the common law, regulating the powers of an administrator over the estate of the deceased, have been greatly altered by statute, which very much enlarges these powers. The whole estate of the decedent, except that portion reserved for the widow and the family, is charged with the payment of his debts. Rev. Code, § 2060. The administrator has, for this reason, power to reduce to his possession all the property, real and personal, of the decedent, subject to the payment of his debts. 15 Ala. 160, 705; 16 Ala. 494; 18 Ala. 9; 42 Ala. 280; 43 Ala. 628. The law vests in him all the rights of the decedent in the property thus subject to be charged with the payment of the debts of the deceased, except the right of disposition by sale or compromise, which is regulated by statute. Among these rights is the right to collect the debts owing to the deceased. This right the administrator is empowered to exercise, in like manner as the deceased could have exercised it, except so far as it is restrained and limited by the statute. In law, the administrator becomes by his appointment the assignee of all the *choses* belonging to the deceased, and he can sue to recover them in his own name as such, as the owner could have done. For the purpose of collection, he is the owner. Rev. Code, § 2523; *Snodgrass* v. *Cabiness*, 15 Ala. 160; *Upchurch* v. *Norsworthy*, 15 Ala. 705. In law, he is the assignee of the decedent, whom he represents. 1 Bouv. Law Dict. *Assignee*, p. 155. His powers, then, in collecting the debts con-

[Lewis v. Wells.]

stituting the assets of the estate, are just as broad as those of the deceased, where they are not trenched upon by the limitations of the statute. Then it follows, if the deceased could have closed the mortgage by a sale, this right passes also to the administrator.

The mortgage is but a security for the debt, and it passes, as such, to the owner of the debt, or to the party entitled in law to collect it. 4 Kent, (159), (160); 1 Hilliard on Mortg. pp. 215 et seq.; Emanuel & Gaines v. Hunt, 2 Ala. 190. Then, the mortgage, with all the rights arising out of it, passed to the administrator, with the debt it was intended to secure. Very clearly, the mortgage gave Figh, the mortgagee, the right to sell the mortgaged property, on a failure to make payment of the debt by the mortgagor. The right to make the sale is thus expressed in the mortgage itself: " If default be made in the payment of said promissory notes at the time they may fall due, it shall be lawful for said John P. Figh, his heirs, and assigns, to take into his possession the said above described property, and sell the same to the highest bidder, at public auction, for cash." This was obviously an authority to the mortgagee to sell. This authority passed, on the death of Figh, the mortgagee and grantee, to his representative, by operation of our statute, if not otherwise. The language of the statute is this: " Where a power to sell lands is given to the grantee in any mortgage or other conveyance intended to secure the payment of money, the power is part of the security, and may be executed by any person, or the personal representative of any person, who, by assignment, or otherwise, becomes entitled to the money thus secured." Rev. Code, § 1589. Under this statute, the administrator had authority to make sale of the mortgaged premises, on default in payment of the debt therein secured. This appears to have been done.

We must look to the deed, for the evidence of the sale. This shows that it was made by the administrator, who had the right to make it. It was not made by Lewis. He does not participate in the conveyance. His acts were merely those of an attorney for his client, and not as an agent with a power to make the sale in the name of his principal. The administrator was the vendor, and the sale was made by him, and the conveyance is in his own name as principal. The sale was, therefore, not void, and it passed such title to the purchaser as the administrator could convey; that is, such title as was in the decedent as the mortgagee, after the law-day had passed.

2. The administrator, or executor where there is a will, is entitled to the possession of the whole property of the decedent, to hold it for disposition under the trusts attached by law to his office, or created by the will. He may hold it for

these purposes, as the owner held it at his death. If this is conceded, he must have the authority to sue for and recover such possession, when it is withheld from him by any one with title inferior to his own. Without this power to reduce the property of the deceased to his possession, the administrator or executor, in many instances, would not be able to discharge the duties of his trust; that is, to pay the debts of the deceased, and the expenses of administration, and, after the satisfaction of these charges, to distribute the residue among those persons entitled to such residue, as the next of kin or legatees. These are duties imposed by law, and for the due performance of which his office is created. Under our system, lands are assets, whether the title is legal or equitable, for the payment of the debts of the deceased; and the administrator may recover them at law, for this purpose. Rev. Code, § 2060. *Anderson* v. *McGowen*, 42 Ala. 280; 22 Ala. 593; 9 Ala. 285; 8 Ala. 99; *Golding* v. *Golding*, 24 Ala. 172; *Russell* v. *Erwin's Adm'r*, 41 Ala. 292; Rev. Code, §§ 2216, 2871. The administrator or executor may also rent the lands of the deceased, and the proceeds of such rents are assets. Rev. Code, § 2076; *Boynton* v. *McEwen*, 36 Ala. 348. In this case, the will disposes of the whole estate of Davis, and charges it with payment of his debts.

The widow and the children of the testator are the legatees; and the estate is to be divided equally among them. The evidence shows that Davis was the highest bidder at the mortgage sale for the lands in controversy; that his bid was accepted by the vendor; and that the purchase-money has been paid; but that Davis died before the conveyance was made. After the death of Davis, the conveyance was made to his executors, the present plaintiffs in the court below. The objections to the manner of conducting the sale by the vendor, by his agent, Lewis, or to the bid of Davis, by his agent, Nabors, are not of such force as to render the sale void. I cannot see that they were even serious irregularities. The owner of property, in this State, is not bound to offer it for sale in any particular manner. He may offer it for sale privately, or at public sale. When the mode by public sale is adopted, as was done in this case, the sale need not be conducted by a licensed auctioneer, but it may be conducted by the owner himself in person, or by his agent for him. When the property to be sold is land, and it is offered to the highest bidder, the person who offers this bid, if it is accepted, is the purchaser. This binds the parties on both sides. The essentials of such a sale are not different from those of other sales. The sale is a contract, the terms of which are proposed on one side, and accepted on the other, and both parties assent to it.

It must also be supported by a sufficient and lawful consideration, and not be made on the Sabbath. When the contract thus agreed upon is reduced to writing, and executed by the parties with the proper formalities, the sale is complete. 1 Pars. Cont. pp. 492, 498 ; Rev. Code, §§ 1534, 1535, 1862, 1863. The contract being so completed, there is then no longer any question as to the sufficiency of the sale under our statute regulating " conveyances for the alienation of lands," or the statute for the " prevention of frauds and perjuries." Rev. Code, §§ 1534, 1535, 1862, 1863. A conveyance, made in conformity with such a sale, which is satisfactory to the vendor and the purchaser, passes the legal title to the purchaser, or to such person or persons as can receive it in his stead. It has already been shown that the administrator of Figh could make the sale in this case, under the power given in the mortgage. He could also complete the sale by a proper conveyance to the purchaser. This is necessary for a completion of the sale. But the question remains, whether the administrator could make the conveyance to any one else than the purchaser, without the purchaser's consent. This he certainly could not do, had the purchaser remained still alive. But his death, before the conveyance was executed, did not avoid the sale. On the payment of the purchase-money, the title of Davis became a perfect equity, which rendered the lands subject to his debts, and to his widow's dower. Rev. Code, §§ 1624, 1928, 2871.

3. The memorandum of the agent who conducted the mortgage sale is obviously less fully and accurately made, than might have been done. It is in these words, which are indorsed upon the mortgage. " The within property was this day by me sold, as agent of George M. Figh, as administrator of the mortgagee, J. P. Figh, dec'd, for $2,300.00, at public auction, to Ed. Davis. March 23, 1869." It is signed by the agent who conducted the sale as auctioneer. Properly, such a memorandum should show : 1st, the property sold ; 2d, the price at which it was sold ; 3d, the terms of the sale ; 4th, the name of the purchaser ; 5th, the name of the person on whose account the sale is made. Rev. Code, § 1863. I think the memorandum in this case comes up to these requirements, in substance. The reference to the mortgage makes the mortgage a part of it, and in like manner the deficiencies of the mortgage are supplied by the reference in the mortgage to the deed. *Lee's Adm'r* v. *Chapman*, 47 Ala. 143, and cases there cited. With these references, the memorandum is sufficient in substance. It shows the terms of the sale, and the lands that were sold. The demands of the memorandum are sufficiently stated.

4. But the memorandum is only necessary as between the parties to the sale. If they choose to be bound without it, the'y may go on, and complete the title by a proper conveyance. This conveyance then becomes the proper evidence of the title. The title of the testator vested in his legatees by his will; but the title so vested charged with his debts. The sale was not void. It bound the vendor to convey, upon the payment of the purchase-money; and it bound the purchaser to pay the purchase-money, upon a readiness to convey by the vendor. The statute makes the alienation or transfer of the property complete on the execution of the conveyance in a proper manner. Rev. Code, § 1534, 1535. If there is any mistake made in such a conveyance, it may be reformed; but it is only the parties interested in the reformation, who are entitled to have the reformation made, or who can repudiate the instrument without correction and reformation. 2 Hilliard, Real Prop. p. 331, § 50; *Trapp & Hill* v. *Moore & Border*, 21 Ala. 693; *Godwin* v. *Younge*, 22 Ala. 553; *Whitehead* v. *Brown*, 18 Ala. 682.

As the conveyance under the mortgage sale is not a nullity, it vests such title in the plaintiffs as to enable them to bring this action, and to recover against the defendants, unless they show a better title. *White* v. *Saint Girons*, Minor, 331; *Wilkins & Smith* v. *Sorrells*, 45 Ala. 272. The court erred, therefore, in the rejection of the deed offered by the plaintiffs in support of their title, for the reasons shown in the bill of exceptions, and no other reasons will be considered in this court.

The judgment of nonsuit in the court below is reversed, and the cause is remanded for a new trial.