117 So.2d 684

**MEMORIAL SHRINES, INC. et al.**

v.

**Harry E. McCONNELL.**

**1 Div. 821.**

Supreme Court of Alabama.

Jan. 21, 1960.

Caffey, Gallalee & Caffey and John M. Tyson, Mobile, and Nicholas S. Hare, Monroeville, for appellant Memorial Shrines.

Tipler & Fuller, Andalusia, for appellant Mason Plan.

Foreman & Brown, Mobile, for appellant Interstate Finance & Discount Co.

Inge & Twitty, Mobile, for appellee.

STAKELY, Justice.

The basic question for decision in this case is whether there can be a strict foreclosure of a vendor's lien divesting the title of the vendee and revesting it in the vendor so as to cut off the statutory right of redemption without a sale of foreclosure.

Harry E. McConnell (appellee) owned 80 acres of land in Mobile County. On August 18, 1955, Memorial Shrines, Inc. (appellant), was organized for the purpose of purchasing or otherwise acquiring real and personal property and for the purpose of selling or disposing of such property as cemetery lots and cemeteries and of furnishing services, care and maintenance of such properties and engaging in any business incident to the cemetery business.

After the cemetery corporation had been organized and had made plans for a cemetery for Negroes, Harry E. McConnell entered into an agreement with it to sell to it the aforesaid eighty acres of land for use in establishing and operating a Negro cemetery.

According to the testimony of Harry E. McConnell, the value of the property was at that time "about $300.00 per acre." Immediately after the contract was entered into Memorial Shrines, Inc., applied to the Board of Revenue of Mobile County for a license to use the property for a cemetery and obtained such a license on December 13, 1959. The license for use as a cemetery having been granted, Harry E. McConnell executed a deed conveying title to Memorial Shrines, Inc., for a total consideration of $79,000 or approximately $1,000 per acre, $4,000 of which was paid in cash and $75,000 of which was secured by a vendor's lien reserved in the deed. The deed contains a power of sale at public outcry if any default occurs in the payment of the indebtedness. Thereupon

Memorial Shrines, Inc., subdivided about two acres of the entire eighty acre tract into small cemetery lots and began selling such lots at from $300 to $400 per lot. According to the allegations of the verified bill of complaint the sales were by Memorial Shrines, Inc., and it had sold approximately 1,450 lots from the two acre parcel on installment contracts for a total consideration of from $435,000 to $580,000 up to the date Harry E. McConnell filed his original bill of complaint on November 20, 1956. Memorial Shrines, Inc., respondent, had collected on account of the sale contracts $110,360 prior to the filing of the original bill of complaint.

The original bill of complaint filed by Harry E. McConnell sought the appointment of a receiver of the corporate assets, relief against two of the incorporators or promotors and against eleven individuals who had been salesmen of the cemetery lots. The relief sought against the salesmen was for commissions received for sales of cemetery lots and repayment of alleged "excessive and unjustified commissions."

The bill also sought relief from the other two individual respondents, Phillip Gabriel and Wallace L. Johnson, for alleged excessive promotional and organizational expenses, excessive travelling and entertaining expenses, alleged withdrawals of large amounts from petty cash for unknown expenses, payment of excessive and unjustified commissions to salesmen of cemetery lots, excessive car expenses and allowances, incurring alleged exhorbitant discount expenses, unnecessary interest expenses and generally for alleged dissipation of funds of the corporation, "not in accordance with good business principles."

The relief sought against Phillip Gabriel and Wallace L. Johnson was, however, primarily for the alleged issuance to them of 17,550 shares of the capital stock of the cemetery corporation allegedly without consideration and against Phillip Gabriel and his corporation, Gabriel's Inc., for the alleged diversion of $13,500 of the funds of Memorial Shrines, Inc., in the guise of a purchase of debenture bonds of Gabriel's Inc., an insolvent corporation, later adjudged bankrupt.

Harry E. McConnell in his bill prayed that a receiver of the assets of Memorial Shrines, Inc., "be immediately appointed * * * to immediately take over the affairs of the corporation upon his giving bond in an amount to be set by the court."

On the date that Harry E. McConnell filed his bill for the appointment of a receiver, he filed a verified motion for the appointment of a receiver alleging that the assets of the corporation were in jeopardy and that irreparable injury would result from delay in the appointment of a receiver. On November 21, 1956, Harry E. McConnell filed the necessary bond to secure the appointment of a receiver and on the same date the court, acting on his motion, entered an order appointing a receiver "of all property, assets and estates of the said Memorial Shrines, Inc., with authority to take immediate possession of said property, premises, books and all other property of every kind belonging to said corporation," and authorizing the receiver to "continue to carry on the business of the said Memorial Shrines, Inc.," and to collect all debts due to it. The receiver qualified by giving bond on the same date.

In thus seeking and obtaining the appointment of a receiver, Harry E. McConnell alleged "that many contracts of sale of lots were executed by colored citizens in and about Mobile for the purchase of lots" in the cemetery and that approximately 1,450 such lots had been contracted to be sold on installment contracts at a price of from $300 to $400 each.

Harry E. McConnell further alleged that while he was entitled to foreclose his vendor's lien because of default in the payment of three monthly installments of $2,000 each, he was not seeking a foreclosure because "Many people have purchased stock in Memorial Shrines, Inc. and creditors have extended credit all in good faith and he believes that said corporation can

ultimately become a going concern and if he forecloses said lien, innocent people will suffer."

His bill for a receivership concludes by alleging that "A receiver ought to be appointed to take over the affairs of the corporation for the benefit of the bona fide stockholders and creditors" and that "unless a receiver is appointed for the corporation, grave injustices will be suffered by stockholders and creditors who will be caused to lose great sums of money through no fault of their own." He further alleged the belief on his part "that when the affairs of the corporation are set in order the same can be run on a profitable and business-like basis."

Thereafter the receivership proceedings instituted by Harry E. McConnell proceeded in the usual manner for over a year. The court on the motion of the receiver fixed the time for filing claims and notice of said order was duly published for four consecutive weeks. Pursuant to the order and notice some twenty-five claims were filed in the cause within the time limit. Among the claims to be so filed was the claim of Harry E. McConnell for $10,000, representing installments on his vendor's lien alleged to be in arrears. Among the claims filed was one by Mason Plan Company, Inc., and one by Interstate Finance and Discount Company, whereby it was agreed that they would take transfers of sales contracts made by Memorial Shrines, Inc., at discount with full right of recourse. The receiver denied one claim as filed too late. He denied twelve other claims but asked the court to fix a time at which each claimant might prove his claim in open court.

On February 10, 1958, Harry E. McConnell filed what is designated as an "Amended and Supplemental Bill of Complaint." Paragraphs "b" to "e", inclusive, were stricken on motion. The bill as thus amended, without seeking a decree determining the amount of the indebtedness secured by the vendor's lien and without asking the court to fix a time within which the indebtedness must be paid, sought only a strict foreclosure of the vendor's lien of Harry E. McConnell, vesting in Harry E. McConnell the absolute title to all of the property covered by the vendor's lien "without any right of redemption," excepting only so much thereof as has heretofore been released by written instruments of release executed by the complainant and his wife.

Memorial Shrines, Inc., demurred to the amended and supplemental bill. The bill as thus amended was again amended by alleging that the complainant is willing to take a strict foreclosure of all of the property covered by said lien subject to the right of all purchasers of cemetery lots located on said premises, under contracts of purchase which are valid and subsisting contracts at the time of the filing of this amended and supplemental bill of complaint. The bill as last amended did not make any of the contract purchasers of lots in the cemetery or their assignees or transferees parties to the suit. The demurrer was refiled to the bill as last amended and was overruled. This ruling is assigned as error.

As a basis for claiming a strict foreclosure of the vendor's lien, cutting off all right of redemption, the amended bill alleged that Memorial Shrines, Inc., "is an insolvent corporation," and that the original bill was filed for the purpose of marshalling the assets thereof for the benefit of creditors. It further alleges that the amount owing complainant and secured by the vendor's lien, including interest and attorney's fees to date, was $78,000; that the property covered by the lien is clearly insufficient to pay said debt, and that if the property covered by the lien were sold at foreclosure by public auction, it could not reasonably be expected that any responsible bid would be received which would satisfy the complainant's said debt, that complainant is willing to take a strict foreclosure of the lien on all property covered thereby subject to the rights of all purchasers of cemetery lots located on said premises under contracts of purchase which are valid and subsisting

contracts at the time of the filing of the amended and supplemental bill of complaint.

After the demurrer of Memorial Shrines, Inc., to the bill as last amended was overruled, it filed its answer and cross bill resisting the strict foreclosure and seeking an injunction against it.

The court denied the relief sought by the cross bill and having heard the testimony orally before it, the court entered its final decree, purporting to vest absolute title in Harry E. McConnell, free of all right of redemption.

There is considerable discussion in briefs as to the testimony which we see no need to set forth since we think that the ruling of the court on the demurrer to the bill as last amended conclusively shows that the court acted incorrectly in granting a strict foreclosure, revesting the title to the land in the complainant and cutting off all statutory right of redemption by Memorial Shrines, Inc.

I. We wish to reiterate here that the deed executed by Harry E. McConnell to Memorial Shrines, Inc., on the 9th day of February, 1956, conveyed title to the land to Memorial Shrines, Inc., with a reservation of a vendor's lien to Harry E. McConnell as security for the balance of the purchase price of the land. So far as we can ascertain the ancient and outmoded remedy of strict foreclosure has never been applied where the legal title is vested in the defendant. According to our search of the authorities, there is presented to this court for the first time the question of whether a court of equity can by strict foreclosure deprive the owner of the title, subject to a vendor's lien, of all right in and to the property and especially the statutory right of redemption conferred by statute. Title 7, § 727 et seq., Code of 1940.

Strict foreclosure was a common law remedy generally recognized in this state and elsewhere to be "harsh and inequitable" and its application was very rare because unjust. Maya Corp. v. Smith,

240 Ala. 371, 199 So. 549. In fact, as pointed out in Moulton v. Cornish, 138 N.Y. 133, 33 N.E. 842, 20 L.R.A. 370, at an early date strict foreclosure was not recognized at all in a large majority of the states and was usual in only two states and in six states including New York, it is permitted only in "exceptional cases", "where a foreclosure has once been had and the premises sold" and "title acquired by the purchaser."

In 118 A.L.R. at page 769, the annotator makes the following statement,

"The remedy of strict foreclosure is in its theory and nature applicable to cases where the plaintiff holds title as against the defendant and the latter has a mere 'right' or 'equity' of redemption the exercise of which may be 'foreclosed.' In the light of legal history and theory, the idea of foreclosing title to land is novel. Generally, at least, a so-called 'foreclosure' where the defendant holds title, implies a sale of the premises."

In Moulton v. Cornish, 138 N.Y. 133, 33 N.E. 842, 843, 20 L.R.A. 370, the origin and basis of the practice of strict foreclosure is pointed out. The court said:

"The equitable remedy known as a 'strict foreclosure' of a real-property mortgage, has never been recognized in this state, save in a very limited class of cases. In England it was the prevailing method of procedure until the enactment of St. 15 § 16 Vict. c. 86, § 48, known as the 'Chancery Improvement Act.' It had its root in the common-law doctrine that upon the execution of the mortgage the mortgagee acquired the fee to the land, and upon, default in payment, a right to the possession, and the mortgagor had no estate or interest therein, and no right of possession, after default had been made in the payment of the mortgage debt. The mortgagee's remedy was by ejectment, and in a court of law it was not an available defense for the mortgagor to plead that he was willing and ready

to pay the debt, if he had once suffered a default to occur. In order to mitigate the hardships of this relation, equity permitted the mortgagor and his privies to redeem by discharging the mortgage debt, and by restoring to him the possession of the land if the mortgagee had taken possession. As it might be uncertain whether the mortgagor or subsequent lienors would ever avail themselves of the right of redemption, it was, while outstanding, a serious impediment to the alienation of the mortgaged property; and equity would therefore entertain an action to compel the parties entitled to this right to exercise it by paying within a reasonable time the amount of the mortgage debt, or be forever barred or foreclosed of the right of redemption; and in case of redemption the decree provided that the mortgagee should reconvey the lands to the mortgagor, or other party redeeming. This proceeding has been termed a 'strict foreclosure,' but it is apparent that it has no appropriate place in a system of laws and jurisprudence where it has been declared that the mortgage does not operate as a conveyance of the legal title, but is only a chose in action constituting a lien upon the land, as security for the debt or other obligation of the mortgagor. * * *."

Such, of course, is the case at bar, where the owner of land has deeded it to another, reserving merely an equitable lien to secure the unpaid portion of the purchase price.

Since the remedy of strict foreclosure was never applied by the holder of the legal title, in states which hold that a mortgage does not vest title in the mortgagee but merely creates a lien, there is no basis for strict foreclosure and the practice is not recognized. For example, in other states in which a mortgage does not convey title but creates a mere equitable lien, this is the established rule. Accordingly in Browne v. Browne, 17 Fla. 607, it was said:

"There is in this state no method either at law or in equity by which a mortgagee can be adjudged absolute owner of the mortgaged property; in other words, we have no strict foreclosure. His equitable remedy here is a sale of the property."

It was further declared by the Supreme Court of Florida in Georgia Casualty Co. v. O'Donnell, 109 Fla. 290, 147 So. 267, 268, that:

"At common law a mortgagee took legal title to the mortgaged property, and foreclosure was to terminate the mortgagor's right to redeem. In this state, a mortgage is a mere lien, and does not vest title in the mortgagee. Under the statute the mortgagee has only a lien, and foreclosure is for the purpose of enforcing it. * * * Strict foreclosure in this state is not permitted, but the equitable remedy of the mortgagee is a sale of the property to pay his debt."

This court recognized the Florida rule in Coral Gables, Inc. v. Patterson, 236 Ala. 201, 181 So. 236, 237, in which it was stated:

"In Florida, the mortgagee has merely a lien, and foreclosure is for the purpose of enforcing it by sale to pay debt, and strict foreclosure is not permitted."

At an early date in Nebraska a mortgage conveyed the legal title to property and the remedy of strict foreclosure was applied. Woods v. Shields, 1 Neb. 453. A little later a statute provided that a mortgage created a lien but did not convey title and it was held that "a strict foreclosure of the interest of one holding the legal title is unknown in this state." Kyger v. Ryley, 2 Neb. 20.

Several later cases followed this holding and the Supreme Court of Nebraska in reviewing all of the earlier cases bearing on the subject held in South Omaha Sav.

Bank v. Levy, 1 Neb. Unoff. 255, 95 N.W. 603, 605, that,

> "A decree of strict foreclosure cannot be obtained by a mortgagee against the owner of the legal title of the mortgaged premises. This doctrine is supported by the decisions in many other. states in which the legal title to the mortgaged premises is retained by the mortgagor."

In the case of Surety Building & Loan Ass'n of Newark v. Risack, 118 N.J.Eq. 425, 179 A. 680, the Supreme Court of New Jersey said, "Strict foreclosure action will not lie against owner of fee or part thereof." And later in United States Savings Bank of Newark v. Schnitzer, 118 N.J.Eq. 584, 180 A. 624, the Supreme Court of New Jersey very pertinently said,

> "While the 1820 law (allowing a foreclosure by sale) is permissive and not mandatory in form, a foreclosure sale has become so usual that strict foreclosure will not now lie against the owner of a fee or any part thereof."

Indiana appears to be one of the six states which holds that strict foreclosure, while recognized as a "harsh remedy", may be used under exceptional circumstances. However, its Supreme Court declared that "it should be pursued only in cases where a statutory foreclosure and sale would be inappropriate" and accordingly held that such a proceeding can never be maintained to cut off the right of one who has legal title. Jefferson v. Coleman, 110 Ind. 515, 11 N.E. 465, 466. This was followed in Jackson v. Weaver, 138 Ind. 539, 38 N.E. 166, 167, where the Supreme Court of Indiana said:

> "The remedy by strict foreclosure * * * can never be used to divest the fee when it is once vested in some one other than the mortgagee or purchaser."

In Haas v. Traynor, Sup., 71 N.Y.S.2d 545, 546, the New York Court quotes from the case of Moulton v. Cornish, supra, to which we have referred and from which we have quoted. In addition to the foregoing we quote the following from Moulton v. Cornish, supra:

> "In many other jurisdictions the same rule obtains, viz.: that strict foreclosure will not be enforced as against a title interest."

We have referred to decisions of courts in other jurisdictions but now wish to consider the statutes and the practice that has prevailed in Alabama for many years. It is our conclusion as we shall undertake to show that neither a contractual vendor's lien nor a mortgage should be foreclosed by applying the ancient remedy of strict foreclosure when the legal title is held by the mortgagee or vendor. There are instances in which our courts of equity have granted relief to the holder of the legal title, which they refer to as "strict foreclosure". For example, when a vendee under an executory contract of sale fails to pay in accordance with the contract, a court of equity will foreclose the equity of the vendee by declaring it forfeited or ended unless the vendee pays the balance owed by him within a reasonable time fixed by the court's decree. Maya Corporation v. Smith, 240 Ala. 371, 199 So. 549.

In Rogers v. Gonzalez, 252 Ala. 313, 40 So.2d 858, a vendee under an executory contract of sale was in default. The vendor with retention of the legal title as security for payment of the purchase price declared the entire indebtedness due as provided in the contract of sale and filed a bill to cut off or foreclose the rights of the vendee under his contract of purchase. The court specifically pointed out, however, that the complainant is a vendor with a retention of the legal title as security for payment of the purchase price and that this amounted to an equitable mortgage. The court held that such equitable mortgage could be foreclosed, but expressly declined to decide whether the bill was good as a bill for "strict foreclosure" for the reason that "the demurrer does not go to that future of the bill."

In Horton v. Martin, 241 Ala. 264, 2 So. 2d 452, 453, there was likewise involved an executory contract of sale. The vendor Ramsey-McCormack, Inc., held the legal title. It transferred its contract of sale and the purchase money note to One SYX but did not convey legal title to him. SYX, as transferee and equitable owner, filed a bill "to declare the right of the lessee-purchasers forfeited, unless they discharge said indebtedness within a time to be fixed by the decree of court" and in event of failure of the purchaser to pay the balance of purchase price, then to vest in him as equitable owner thereof, the legal title of his transferor. The relief granted was in the right of the holder of the legal title. It was not a case where the owner of an equitable interest maintained a bill for strict foreclosure against the holder of the legal title or the one standing in its shoes. In other words, it involved only the enforcement of an equitable right as against a purchaser under an executory contract.

In the case of Hitchcock's Heirs v. United States Bank of Pennsylvania, 7 Ala. 386, there was not involved a strict foreclosure either of a mortgage or a vendor's lien. On the other hand it involved a voluntary sale of the equity of redemption by the mortgagor to the mortgagee and a deed to carry out the agreement of sale. The bill sought a decree that the mortgagor no longer had any interest in the property after her sale and deed and that the mortgagee's title be quieted against any possible claim of unfairness in buying the equity of redemption of mortgagor.

The case of Hunt v. Lewin, 4 Stew. & P. 138, was based on the principle that sales "are mainly intended for the benefit of the mortgagors and these have expressed their preference for such foreclosure without a sale." To put it a little differently, that case was based on the consent, in fact the request of the mortgagor so as to relieve him from a deficiency judgment.

We find no case in which a court of equity, however, has entered a decree of strict foreclosure without the consent of the mortgagor. The practice has consistently been not to decree a strict foreclosure as at common law but to decree a sale so that the mortgagor could obtain the benefit of a sale for an amount in excess of that due on the mortgage or the mortgagee could by such sale establish a deficiency for which he could prior to a statute later referred to, recover only by a suit at law.

The only other case to which we have been referred is that of Dubose v. Dubose, 7 Ala. 235, 42 Am.Dec. 588, but that case does not involve in any way strict foreclosure by the holder of an equitable interest against the holder of the legal title so as to divest the legal title out of the owner and to vest it in the holder of the equity.

We note that we are cited to the text of 37 Am.Jur. p. 38, which appears to state the exceptional rule in regard to foreclosure of mortgages that obtains in a few states. It does not deal with strict foreclosure of vendor's liens by which legal title can be obtained by decree of a court without a sale of the property and without any right of redemption. In this connection we refer to the general rule applicable to mortgages as set out in 37 Am.Jur. pp. 32–33.

Let us now consider the statutes of Alabama. Beginning with § 1319, Code of 1852, our legislature provided a method of foreclosure of mortgages by sale under the power of sale given the grantee. This method of foreclosure with broadening modifications has continued through the years and is now embodied in Title 47, §§ 164–173, Code of 1940. At one time it was contended that this statutory method of foreclosure was intended to be the exclusive method of foreclosure but in view of the fact that the statute did not expressly take away the jurisdiction of courts of equity to foreclosure and the further fact that the grantee might not be given the right to purchase at his sale, it was held that "the remedy under the power is not so full and ample" as to withdraw the jurisdiction of equity to foreclose by decree.

McGowan v. Branch Bank at Mobile, 7 Ala. 823.

This statutory method of foreclosure was apparently designed as a method of foreclosure equivalent to, though not exclusive of the remedy of foreclosure by action, and the terms of the mortgage or vendor's lien in regard to giving notice of the time, place and terms of sale on foreclosure, were intended to be applied whether the mortgagee elected to foreclose by exercise of the power of sale or by a proceeding in equity. At the time of this statute foreclosure by sale of the property was recognized as the just and equitable method of foreclosure and it was never intended that a mortgage or vendor's lien could ever be foreclosed either under the power or in a court without a sale. A sale on foreclosure had long been the established and uniform practice and the situation was identical with that in the case of United States Savings Bank of Newark v. Schnitzer, 118 N.J.Eq. 584, 180 A. 624, from which we quote as follows:

"While the 1820 law (allowing a foreclosure by sale under power) is permissive and not mandatory in form a foreclosure sale has become so usual that strict foreclosure will not now lie against the owner of a fee or any part thereof."

The effect of this statute to require a sale even on foreclosure by action in equity, is recognized in and shown by the repeated statement of the rule that the remedy of the mortgagee is threefold: (1) "To bring a bill to foreclose the equity of redemption and sell the property for the satisfaction of the debt and have a deficiency decree against the mortgagor." (2) To recover possession of the mortgaged premises. (3) To sue on the debt. Roper v. McCook, 7 Ala. 318; Tyson v. Weber, 81 Ala. 470, 2 So. 901; Rountree v. Satterfield, 211 Ala. 464, 100 So. 751; Lavretta v. First National Bank of Mobile, 235 Ala. 104, 178 So. 3; Wood v. Barnett, 208 Ala. 295, 94 So. 338.

Equity Rules 101 and 102 (old rules 106 and 107), Code of 1940, Title 7, p. 1119, originating as Equity Rules 25 and 26, Clay's Digest, p. 615, clearly recognize and contemplate that in all "mortgage suits" in equity, there will be a sale of the mortgaged premises. Equity Rule 101 provides that in all such suits "subsequent encumbrancers" may be brought in by alleging that they claim an interest and praying the issuing of a subpoena to them. In such event it is provided that "the court shall have power to decree a sale, and direct the proceeds to be brought into court, without adjusting to priorities between such parties." Rule 102 provides that subsequent incumbrancers or parties in interest, not made parties to the cause may be brought before the Court by the complainant or purchaser "and if they make no opposition by answer, their interest may be foreclosed without a re-sale of the property."

We further say that no strict foreclosure of any mortgage or vendor's lien without a sale was contemplated by our legislature as is obvious from the statute originating in 1860, incorporated in our Code of 1867 as § 3479 and applied in Winston v. Browning, 61 Ala. 80; Sayre v. Elyton Land Co., 73 Ala. 85, and Hamill v. McCalla, 228 Ala. 281, 153 So. 412.

This statute was designed to enable a mortgagee or the holder of a vendor's lien where any bill is filed "for the foreclosure of mortgages, or the enforcement of vendor's liens to have the Chancery Court ascertain the amount of the indebtedness and to have execution for any balance due," but it expressly provides that "no execution must issue on decrees for foreclosure of mortgages or the enforcement of equitable liens until the propery ordered to sale shall have been sold, and the sale confirmed."

The statute applies generally to all bills for foreclosure of mortgages and vendor's liens and contemplates a sale of the property in every case so that (1) the mortgagee will get the benefit of any surplus realized over the mortgage debt and (2)

if this sale brings less, then so that the mortgagee may obtain a deficiency judgment on which execution may issue.

It seems to us that the addition of § 166, Title 47, Code of 1940, giving the mortgagee when "no power of sale is contained in the mortgage" the option, after condition broken to "foreclose same either in a court having jurisdiction of the subject-matter, or by selling for cash at the court house door" after giving the requisite notice, is strongly indicative that the foreclosure, whether in the court or on mortgagee's own initiative, is to be by sale of the mortgaged property. Certainly the legislature in giving the mortgagee the option, when no power of sale was conferred by the mortgage, to foreclose in court or by sale out of court, contemplated that, in either event, the property would be sold so that the mortgagor could claim any surplus due him or mortgagee could get a decree and execution for any balance due him after a sale.

But a further and what seems to us to be an unanswerable argument against a strict foreclosure in any case, lies in the statute, creating the statutory right of redemption after foreclosure of the equity of redemption. This statute first appeared in the Code of 1852 as § 2116 et seq., and established a policy which has never since been departed from but which has been considerably extended (Title 7, § 727 et seq., Code of 1940). It contemplated and provided for redemption by all debtors whose debts are secured by mortgage. As it provided that this unqualified right of redemption after foreclosure should be from sales under powers of sale or sales by decree of court, the statute obviously contemplated in every instance a foreclosure by sale, whether the foreclosure is by court action or under the power of sale. This statute does not contemplate that any such debtor could be deprived of this valuable statutory right by the simple device of filing a bill, alleging the property involved could not reasonably be expected to bring, on forced sale, as much as the balance due on the mortgage. Such rule would withdraw the statutory protection intended for all debtors, from those who need it most. The uniform practice of ordering sales on foreclosure by court action strongly confirms this necessary construction of the redemption statute.

The purpose of the statutory right of redemption given to all such debtors is to prevent the sacrifice or loss of their land by giving them the absolute right to redeem or reacquire it on specified terms at any time within two years after foreclosure of the equity of redemption. Bedsole v. Tiller, 236 Ala. 101, 181 So. 286; Long v. King, 233 Ala. 379, 171 So. 738; United States Savings Bank of Newark v. Schnitzer, 118 N.J.Eq. 584, 180 A. 624.

The statute gives the debtor the right to redeem and it is not in the power of the holder of the mortgage or vendor's lien "to deprive him of that right. * * * We have then here an absolute right." Francis v. White, 142 Ala. 590, 39 So. 174, 178.

This statutory right is illustrated by the recent case of Espalla v. Lee, 266 Ala. 431, 96 So.2d 763, 765, in which this court held that it could not be defeated even by a sale for division within the two year period, under the long established policy authorizing such sales so as to put an end to cotenancies no longer desired. The court in its opinion said, "The redemption statute * * * allows a redemption to be made at any time within two (2) years after the foreclosure." And the court held that it could not be evaded or avoided by a sale for division within the two year period.

The statute providing for the statutory right of redemption is designed to give the owner after foreclosure the right to repurchase or reacquire his property for a period of two years. Even if the property because of depression or for any other reason has depreciated in value until it is worth less than the mortgage debt at the time of foreclosure, the mortgagor is nevertheless given the unqualified right to obtain by redemption the benefit of any increase in the value

of his property during the two years or to redeem it and get the benefit of any future increase in value. His right to redeem is not made and is not to be made dependent on its value at the time of foreclosure, but is intended to be and is the absolute, unqualified right to redeem at any time within two years after foreclosure, regardless of its value at the time of foreclosure.

Many years ago Chief Justice Brickell in referring to the purpose of this statute said:

"The purpose of the statute is to prevent the sacrifice of real estate at forced sales under judicial process or decrees, or mortgages or deeds of trust and to afford the debtor, or his creditors, in payment of his debts, the advantage of any increase in the value of the lands, within the statutory period." Posey v. Pressley, 60 Ala. 243.

 We do not consider that the mortgagee or lien holder can deprive the debtor of the absolute statutory right of redemption by having the court enter a decree purporting to vest title in him absolutely and free of the right of redemption guaranteed by statute.

It will be observed that § 727, Title 7, Code of 1940, makes no express reference to a vendor's lien. Our cases however hold that the statute applies to the statutory period of redemption from foreclosure of a vendor's lien. This is evidently done on the theory that the vendor's lien is construed to be in effect a mortgage and the statement is made that it is governed by the same rules as that of a mortgage. Brannan v. Adams, 202 Ala. 442, 80 So. 826. But the general statement that the contract lien reserved to a vendor is to all intents and purposes a mortgage, does not mean that such a vendor's lien can be enforced without a sale so as to cut off the statutory right of redemption. We do not consider that the general statement contained in our cases as illustrated by the foregoing case presents any problem in the case at bar.

We conclude that the amended bill seeking a strict foreclosure is without equity and was subject to that ground of demurrer. As a bill without equity, it will not support the decree of strict foreclosure, undertaking to divest the title held by the Memorial Shrines, Inc., and to vest it in Harry E. McConnell so as to defeat the statutory right of redemption in Memorial Shrines, Inc.

It results that the decree of the lower court must be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.