This is an appeal from an order of the Circuit Court of Pike County denying recovery to the plaintiff in an action of general assumpsit for money had and received. We reverse.
Charles E. Senn and his wife, Cheryl R. Senn, were indebted to Brundidge Banking Company (BBC) for money borrowed, and to secure these loans they executed mortgages on separate parcels of real estate in Pike County. The Senns also borrowed money from the First National Bank of Brundidge (FNBB) and on December 11, 1971 they executed a mortgage upon 1.42 acres of land in Pike County. This land was not included in the mortgages to BBC. The FNBB mortgage contained the following clause:
 Now then in order to better secure the payment of said note, (s) together with all other indebtedness we may owe The First National Bank of Brundidge, before the full payment of this note(s) and mortgage,] [granting have granted, bargained, sold and conveyed, . . .
and a defeasance clause referring to "such other and additional indebtedness . . ."
On March 11, 1974, the Senns gave another mortgage on the same 1.42 acres to Wiregrass Bank and Trust Company, Headland.
Then on May 16, 1974, the Senns borrowed money from George W. Mobley and executed a mortgage on the same 1.42 acres of land.
Later that year, on October 9, 1974, FNBB transferred the mortgage of December 11, 1971 to BBC, and there is evidence in the record that one of the BBC officials involved in this assignment was informed by an official of FNBB of the existence of the second mortgage on this 1.42 acres. Apparently, the Senns were already indebted to BBC in the amount of approximately $90,000, and BBC took the assignment, in exchange for a payment of $20,800.54, in order to better secure themselves.
On October 9, 1974 the Senns executed a new promissory note in the amount of $50,035.50, *Page 1349 
payable to the order of BBC. This note recited that it was secured by the mortgage of October 9, 1974 assigned by FNBB to BBC. The proceeds of this note apparently were not paid to the Senns, but were used to pay to BBC the purchase price of the October 9, 1974 mortgage, and to satisfy other past due loans made by BBC to the Senns.
On May 8, 1975, BBC foreclosed the mortgage on the 1.42 acres of land, as well as two Senn mortgages on other parcels. The three parcels were offered separately. The highest bid for the 1.42 acre parcel was $55,676.12. The aggregate sum for which the three parcels sold was $99,506.78. This lump sum bid was made by BBC, which bought the property, by adding the three separate bids, each representing the debt on the respective parcels, and adding $2.00 to that sum. At the time of this foreclosure sale, the Wiregrass Bank had released the 1.42 acre parcel from its mortgage of March 11, 1974, and so the only lienholders claiming an interest in it were BBC and Mobley.
Mobley contends that at the time of the foreclosure sale he was owed a principal balance of $35,000, plus $2,847.90 in interest, or a total of $37,847.90. He claims an additional sum of $2,569.45 as interest from the foreclosure sale to the date of trial, or a grand total of $40,417.35. Mobley's position, simply put, is that he is a lienholder with a second priority upon the sum which the foreclosure sale brought in on the 1.42 acre parcel. Put in another way, he maintains that because BBC purchased the first mortgage from FNBB for $20,800.54, that is the only sum which BBC should receive from the sale before Mobley's second mortgage is satisfied. To collect the sum he claims, Mobley brought this action of general assumpsit under the common count for money had and received, demanding $39,946.66, but on this appeal he claims only the difference between $55,676.12 (the amount bid by BBC for the mortgage) and $20,800.54 (the sum paid by BBC to FNBB for the mortgage), or $34,875.58. We have not overlooked Rule 2, ARCP, which abolishes the forms of action and replaces them with one form of action justifying whatever relief is appropriate under the allegations. This rule, however, does not purport to abolish substantive remedies in existence at the time of adoption of the rules, of which general assumpsit was one.
After a hearing without a jury, the trial court found in favor of BBC, holding that:
 The effect of the foreclosure of the senior mortgage was to cut off the equity of redemption in the property covered by the junior mortgage, and the junior mortgagee would be entitled to recover from the senior mortgagee any money which lawfully belonged to him. The suit must be predicated on a valid foreclosure of the senior mortgage.
 The senior mortgage assigned to the defendant must be construed to secure any other indebtedness owing by Senn to the mortgagee First National or assignee mortgage holder Brundidge Bank, and such provisions of the mortgage shall be given full effect as provided by law. First National Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64 (1939); City National Bank of Dothan v. The First National Bank of Dothan, 285 Ala. 340, 232 So.2d 342 (1970).
 After notice of the attaching of a junior lien, the senior mortgagee will not be protected in making optional future advances under his mortgage given to secure such advances. This rule applies in Alabama even though the junior mortgage contains language expressly stating it is subordinate to the senior mortgage. Hampton v. Gulf Federal Savings Loan Association, 287 Ala. 172, 249 So.2d 829 (1971).
 There is credible evidence from disinterested witnesses to the effect that an officer of defendant bank had actual knowledge of the existence of a junior mortgage. Whose — the evidence does not reflect. There can be no different *Page 1350 
result from the fact that the officer of the defendant bank was merely told of an existence of another mortgage rather than specifically the second mortgage of the plaintiff.
 The manner of the sale and purchase of several tracts for one price; the lack of evidence as to the market value of the tract covered by the plaintiff's mortgage and failure of the plaintiff to require the defendant to sell the tract separately as provided in Vines v. Wilcutt, 212 Ala. 150, 102 So. 29 (1924), requires that a judgment be entered for the defendant in this civil assumpsit action.
We have no disagreement with the trial court's references toBain and Dothan, as they pertain to the law of advances. Nor do we take issue with the statement of the general principle of law governing the effect of notice, or actual knowledge, to a senior lienholder of the existence of a junior lien when the senior makes advances under his mortgage, Hampton v. GulfFederal Savings Loan Association, 287 Ala. 172, 249 So.2d 829
(1971), although we point out that the issues discussed in the dissent in that case, dealing with exceptions to this general rule, are not presented in the case before us. It should not be overlooked also that the trial court here found as a fact that BBC had actual knowledge which, under the principle stated above, and under the ore tenus rule, would withhold from the bank the protection of the advances clause in favor of the junior mortgagee. 2 A Ala.Dig. Appeal and Error 1008.1 (6).
At this point it may be helpful to summarize the issues presented by the parties, both of whom have appealed the trial court's ruling.
BBC contends that: (1) the effect of the trial court's order pertaining to the assigned mortgage was to secure any other indebtedness of Senn to BBC, thus, after the proceeds of the foreclosure sale were applied to those debts no surplus remained for Mobley; (2) that Mobley's failure to argue the effect of the advances clause of the assigned mortgage precludes any consideration of that issue now; (3) that the oretenus rule requires an affirmance; (4) that the presumption accompanying the trial court's denial of the motion for a new trial requires affirmance; (5) that Mobley's equity, if any, was as a remote third, not second, mortgage in view of the Wiregrass Bank mortgage; (6) that Mobley's rate of interest on the note executed by Senn was usurious and thus Mobley came into court, in his equitable action for money had and received, with unclean hands.
Mobley, on the other hand, contends that the case presents only two principle issues: (1) whether in his action for money had and received the plaintiff was required to prove market value of the asset sold which forms the basis of his action; and (2) whether a second mortgagee is deprived of his common counts action because he failed to require the senior lienholder to sell the property separately when it was offered and bid separately (but sold in the aggregate).
BBC's first and third issues overlook that part of the trial court's order on the effect of notice of a junior lien upon the senior mortgagee who makes advances. Accordingly, whatever was the effect of the advances language in the FNBB mortgage transferred to BBC, the factual finding of the trial court that BBC had actual notice of the junior lien preserved any surplus for that junior mortgagee, as we have shown above. The oretenus rule would support the trial judge's finding of that fact.
On BBC's second, third and fourth issues, as we construe the briefs and argument, Mobley contends that any issue on the effect of the advances clause is immaterial because the court's finding of actual notice of the second mortgage established Mobley's priority over any sum constituting an advance. We agree that this was the effect of the trial court's finding, and thus the material legal issue created thereby was whether, as a matter of law, Mobley was entitled to any of the proceeds of the foreclosure *Page 1351 
sale as a junior mortgagee. If he were so entitled as a matter of law, the denial of Mobley's motion for a new trial would not mitigate the application of an erroneous principle of law to his case. Cf. Parker v. McGaha, 291 Ala. 339, 280 So.2d 769
(1973); McDaniel v. Birmingham News Company, 276 Ala. 320,161 So.2d 799 (1964).
BBC's fifth point is equally without merit. Wiregrass Bank did not assert any claim to the 1.42 acres at the time of the foreclosure sale and in fact had released its claim prior to that time. When the sale took place, therefore, there were only two claimants to the proceeds, BBC and Mobley, one a senior and one a junior mortgagee. And the legal issue between these two dealt with any priority each had to those proceeds.
Concerning BBC's final point, as Mobley indicates, usury is an affirmative defense which must be specially pleaded, and cannot be considered for the first time on appeal. Brown v.Warner, 173 F.2d 162 (C.A. 5 1949); American Casualty Companyv. Morris, D.C., 51 F. Supp. 889, aff'd 146 F.2d 208 (CCA 4th 1944). The defendant's general denial addressed to the plaintiff's count for money had and received cannot be construed as placing in issue the rate of interest on a promissory note, hence that matter should have been specifically pleaded.
Turning now to the issues raised by the plaintiff-appellant, his first point is well-taken. The trial judge's order shows that he placed emphasis upon the fact that the three mortgaged tracts were sold for one price rather than separately, and concluded that plaintiff should not recover anything out of that sales price because (1) he had not offered proof of the market value of the 1.42 acres, and (2) had not required BBC to sell that 1.42 acres separately as he must have done, according to the trial court, under the mandate of Vines v. Wilcutt,212 Ala. 150, 102 So. 29 (1924).
We believe the trial judge misconceived that decision when he applied it to the facts of this case. The failure of plaintiff to require a separate sale undoubtedly applies to a supposed requirement that this junior mortgagee should have marshalled the assets of the Senns in order that a priority in their sales be established in order to protect the interest of the junior. But marshalling was inappropriate here because the Senns never sold the 1.42 acre tract by separate parcels. FNBB (later BBC) and Mobley both held mortgages on the same tract. There were no conveyances of parcels of that one tract which remained under the two mortgages. The following language, taken from Vines at 152-3, 102 So. at 30 which quotes Pomeroy, Equity Jur. andJones on Mortgages is appropos:
 `Whenever the mortgagor has conveyed separate parcels of the mortgaged premises by warranty deed to successive grantees, and there are no special provisions in any of their deeds, and no other dealings between themselves or with the mortgagor which disturb the equities otherwise existing, a priority results, depending upon the order of conveyance. As between the mortgagor and all the grantees, the parcel in his hands, if any, is primarily liable for the whole mortgage debt, and should be exhausted before having recourse to any of theirs; as between the grantees, their parcels are liable in the inverse order of their alienation, and any parcels chargeable first in order must be exhausted before recourse is had to the second.'
. . . . .
 `When the mortgagor has made successive sales of distinct parcels of the mortgaged land to different persons by warranty deeds, it is generally regarded as only equitable that the mortgagee, when he afterwards proceeds to foreclose his mortgage, should be required to sell in the first place such part, if any, as the mortgagor still retains, and then the parts that have been sold in the same *Page 1352 
subdivisions, beginning with the parcel last sold by the mortgagor.'
. . . . .
 `These equitable considerations have led to the adoption of the rule that the mortgagee in such case shall sell the mortgaged land in the inverse order of its alienation by the mortgagor; and it will be seen by the cases cited that this rule has been generally adopted.'
Neither party has cited us to Title 33, § 4, Ala. Code which allows marshalling, but we observe in passing that, even if applicable, this section would not have required the prior lienor (BBC) to resort to that order of the property unless he could have done so without risk of loss to himself. S. Lotman Son, Inc. v. Southeastern Financial Corp., 288 Ala. 547,263 So.2d 499 (1972). Before that question becomes relevant, however, another question is begged, that is, whether the senior mortgagor here had any right to apply the surplus of the sale over the amount of the FNBB mortgage to the amounts of the other Senn mortgages on different tracts. BBC's knowledge removed this question, as the trial court found.
In any event, Vines v. Wilcutt, supra, is not the case which allows such a procedure. In that case a foreclosure sale had already occurred. The complainant, a junior mortgagee, nevertheless sought afterward to exercise his equity of redemption and marshalling. We have already addressed ourselves to the latter aspect. As to the former, this Court held that the equity of redemption had been cut off by the foreclosure, leaving only the statutory right of redemption. The Court went on to hold that upon a regular sale under the power contained in the mortgage, the senior mortgagee was under no duty to assert the equitable rights of the junior lienholder. That case did not hold that all of the junior mortgagee's rights in the property or in the proceeds of the sale were waived. It held only that, even if he had been entitled to marshalling, his failure to assert his equity of redemption prior to foreclosure caused him to lose his equitable rights incident to his equity of redemption, "leaving only the statutory right of redemption which is not sought to be here exercised." Ibid,212 Ala. at 154, 102 So. at 32. The plaintiff's statutory right of redemption remains available to him, Memorial Shrines, Inc. v.McConnell, 270 Ala. 266, 117 So.2d 684 (1960), and the question is whether that is the only remedy available to a junior mortgagee who claims a surplus from the foreclosure sale. We think not. Foreclosure of a mortgage extinguishes the debt to the amount of the purchase price, if that amount is less than the debt, or extinguishes the entire debt if the purchase price is more than that amount, and it is only the correct amount of the mortgage debt which is extinguished by the sale. Alford v.Sou. Bldg. Loan Assn., 228 Ala. 412, 153 So. 864 (1934). But foreclosure has been held not to preclude the right to bring an action for money had and received in order to determine whether a surplus exists for the benefit of the mortgagor, Alford,supra, and we do not doubt that the junior lienholder may test his entitlement by the same action. Meadows v. Birmingham Fed.Sav. Loan Soc., 232 Ala. 3, 166 So. 53 (1936); Union Bank andTrust Co. v. Royall, 226 Ala. 670, 148 So. 399 (1933); Webster Wilson v. Singley, 53 Ala. 208 (1875). Having this right, it would be incumbent upon the junior lienholder to prove only the amount of the surplus received as a sum certain, or one which could be made certain:
 The property mortgaged had been sold and converted into money by appellants [senior mortgagees], they having the prior mortgage. The surplus of the proceeds of sale, remaining in their hands after the satisfaction of their mortgage, was money had and received, belonging ex equo et bono, to the subsequent mortgagees. It was recoverable in an action of assumpsit [citations omitted]. In such an action it is permissible for the second *Page 1353 
mortgagee to show the sums received by the prior mortgagees from the property covered by his mortgage, that the sum in their hands to which they are entitled may be ascertained. No resort to a court of equity is necessary to compel the appropriation of such money to the satisfaction of his mortgage. The law makes the appropriation. (Emphasis supplied.)
This quotation from Singley, supra at 211 discloses that the amount of the junior mortgagee's recovery is not dependent upon his establishing market value; he need establish only the surplus of the proceeds and the amount of his mortgage debt.
Was there a surplus from this sale which could be applied to Mobley's debt? As we have indicated, the entire sale brought in $99,506.78. This sum includes only two dollars more than the sum of the individual bids for the three tracts. The bid for the 1.42 acre tract was $55,676.12 and this sum obviously was obtained for it. BBC simply added two dollars to the total of all bids and bid in all three parcels. The most which can be stated about any claim of Mobley to a part of this two dollars is that by not insisting on a separate sale he had waived his right to it. He had not, however, lost his right to prove that sum allocable to the 1.42 acres as the price received for it on the foreclosure sale, and the record discloses such proof.
Having proved a surplus from the sale and the receipt by the senior mortgagee of a sum in excess of his mortgage debt, Mobley as junior mortgagee was entitled to have that excess applied to his mortgage indebtedness. Accordingly, the case must be reversed and remanded to afford that result. It is so ordered.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER and SHORES, JJ., concur.