MURDOCK, Justice.
We granted a petition for a writ of cer-tiorari filed by GMAC Mortgage, LLC (“GMAC Mortgage”), challenging thé vacation by the Court of Civil Appeals of a judgment entered by the Jefferson Circuit Court on GMAC Mortgage’s ejectment action against Reginald A. Patterson and Diana V. Patterson. 'We reverse the judgment of the Court of Civil Appeals and remand the case.

I. Facts and Procedural History

The opinion of the Court of Civil Appeals in this action provided a rendition of relevant facts that are not disputed by the parties. The Court of Civil Appeals explained:
“On September 4, 2007, GMAC Mortgage brought an ejectment action against the Pattersons. GMAC Mortgage alleged that the Pattersons had mortgaged their house located on Southcrest Trail in Bessemer (‘the house’) to Option One Mortgage Corporation (‘Option One’), that Option One had transferred the mortgage to GMAC Mortgage, that GMAC Mortgage had foreclosed the mortgage on August 7, 2007, and that GMAC Mortgage was the owner of the house by virtue of the foreclosure salé. GMAC Mortgage further alleged that it had made a written demand for possession of the house in accordance with § 6-5-251(a), Ala.Code 1975, and that the Pattersons had not vacated the house. As relief, GMAC Mortgage sought possession of the house, damages for wrongful detention of the house, and a determination that *847 the Pattersons had forfeited their right to redeem the house by failing to vacate it within 10 days after GMAC Mortgage demanded possession. Answering, the Pattersons asserted, among other things, that the foreclosure was unlawful. They also asserted a counterclaim seeking a determination that the foreclosure was unlawful.
“GMAC Mortgage moved for a summary judgment and later supplemented its summary-judgment motion with additional evidence. The Pattersons submitted evidence in opposition to the summary-judgment motion.
“The evidence submitted by GMAC Mortgage in support, of its summary-judgment motion included the foreclosure deed purporting to convey title to the house to GMAC Mortgage. The foreclosure deed recites that GMAC Mortgage accelerated the debt secured by the mortgage.4 The foreclosure deed also recites that GMAC Mortgage gave notice of the foreclosure of the mortgage in a newspaper of general circulation in Jefferson County on May 19, May 26, and June 2, 2007, and that GMAC Mortgage foreclosed the mortgage on August 7, 2007. The evidence submitted by GMAC Mortgage also included a written assignment executed by Option One on August 6, 2007, in which Option One assigned the mortgage to GMAC Mortgage.
“Following a hearing, the trial court entered an order granting GMAC Mortgage’s summary-judgment motion insofar as it sought a determination that the foreclosure was valid but denied the motion in all other respects on the ground that a genuine issue of material fact existed regarding whether the Patter-sons had received notice of GMAC Mortgage’s demand for possession of the house after the foreclosure.
“Following a bench trial regarding the issue whether the Pattersons had received notice of GMAC Mortgage’s demand for possession, the trial court entered a judgment (1) finding that GMAC Mortgage had given the Pattersons notice of its demand for possession, (2) ordering the, Pattersons to deliver possession of the property to GMAC Mortgage, and (3) ruling that the Pattersons had forfeited their right to redeem the property; however, the trial court did not award any damages for wrongful detention of the property. The Patter-sons timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
[[Image here]]
“4The Pattersons deny that they received notice of the acceleration of the debt.”
Patterson v. GMAC Mortg., LLC, 176 So.3d 840-41 (Ala.Civ.App.2012) (some footnotes omitted).
The Court of Civil Appeals vacated the judgment of the trial court and dismissed the appeal. Specifically, the Court of Civil Appeals concluded that “GMAC Mortgage lacked authority to foreclose the mortgage when it initiated the foreclosure proceedings, and, therefore, the foreclosure and the foreclosure deed upon which GMAC based it ejectment claim are invalid.” Patterson, 176 So.3d at 842. “Moreover,” according to the Court of Civil Appeals, “because GMAC Mortgage did not own any interest in the house, it lacked standing to bring its ejectment action against the Pat-tersons” and, in turn, the trial court did not have standing over the ejectment action. Id. at 842.
GMAC Mortgage petitioned this Court for a writ of certiorari, which we granted.

*848
II. Analysis

GMAC Mortgage argues that this Court should reject the holding of the Court of Civil Appeals in this case that a mortgage foreclosure is invalid when the foreclosing entity is not the mortgagee or the assignee of the mortgagee’s interest in the property at the time of the “initiation of the foreclosure proceedings” and that, in turn, this circumstance deprives the mortgage purchaser of “standing” to bring an ejectment action against the original debtor. We agree with GMAC Mortgage that the validity of a foreclosure turns not on whether the foreclosing party held the mortgage and the power of sale at the time of the initiation of the foreclosure process, but on whether it held the mortgage and the power of sale “at the time the power of sale is executed.”
As GMAC Mortgage notes, before the decision of the Court of Civil Appeals in this case and in Sturdivant v. BAC Home Loans Servicing, LP, 159 So.3d 15 (Ala. Civ.App.2011), there was no notion in Alabama jurisprudence that the holder of a mortgage must have received the mortgage interest before the “initiation of foreclosure proceedings.”- In Sturdivant, the Court of Civil Appeals relied on Kelly v. Carmichael, 217 Ala. 584, 537, 117 So. 67, 70 (1928), to announce this rule. 159 So.3d at 31. Kelly, however, states only as follows:
“The mortgagor, or those standing in his shoes, to whom the equity- of redemption has been conveyed by the mortgagor, has the undoubted right to pay the mortgage debt and lawful charges incurred incident to a proceeding to foreclose at any time before the foreclosure is perfected, and this right would be greatly embarrassed, if not entirely destroyed, if one who has a mere contingent interest in thé debt, and who has not a present right to receive the payment and discharge the mortgage, can exercise the power of foreclosure, and this is especially true where the mortgage and the debt thereby secured has been pledged to some person unknown to the mortgagor.
“The clear test of the right of an assignee of the mortgage to exercise the power of sale under the statute is that such assignee is entitled to receive the money secured by the mortgage. Wildsmith v. Tracy et al., 80 Ala. 258 [ (1885) ]; Harton v. Little et al., 176 Ala. 267, 57 So. 851 [ (1911) ]; Johnson v. Beard, 93 Ala. 96, 9 So. 535 [ (1981) ].”
217 Ala. at 537, 117 So. at 70 (emphasis added).
The conclusion in Kelly was based on the language of § 9010, Ala.Code 1923, the predecessor to § 35-10-1, Ala.Code 1975. Section 35-10-1 provides, in pertinent part, that, “[wjhere a power to sell lands is given ..in any mortgage, ... the power is part of the security, and may be 'executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured.”[1] (Emphasis added.) Thus, Kelly referred to the “exercise” of the power of sale and § 35-10-1, Ala.Code 1975, refers to the “execution]” of the power of sale; neither authority mentions the “initiation of foreclosure proceedings.”
The exercise or execution of a power of sale is the means by which the law of Alabama (and of most, if not all, other states) contemplates that a mortgagee or its assignee can, without resort to judicial action, “foreclose” the rights of the mort *849 gagor to the mortgaged property.[2] • See Ala.Code 1975, § 35-10-1 et seq., particularly §§ 35-10-1 through -3; Memorial Shrines, Inc. v. McConnell, 270 Ala. 266, 276, 117 So.2d.684, 692 (1960) (explaining that Alabama has never recognized so-called “strict foreclosures” and that, instead, “the statute [i.e., Title 47, § 166, Ala.Code 1940 (Recomp. 1958), the predecessor to § 35-10-3] obviously contemplated in every instance a foreclosure by sale, whether the foreclosure is by court action or under the power pf sale” (emphasis added)).[3]
“A power of sale in a mortgage or deed of trust, when properly exercised, enables the party in interest to effect a complete foreclosure of the mortgage by entirely ex parte proceedings without submitting his or her rights to a court of law or of equity and without invoking the aid of such a court in accordance with applicable state statutes.”
59 C.J.S. Mortgages § 739 (2009) (footnotes omitted; emphasis added). See also 6 Baxter .Dunaway, Law of Distressed Real Estate § 64:18 (“The most common foreclosure procedure used is the nonjudicial foreclosure. These foreclosures are also known as a ‘trustee’s sale’ or ‘foreclosure under the power of sale.’ ”).
“The exercise of the power of sale is the equivalent of a legal foreclosures but it is not subject to the rules relating to mortgage foreclosures by judicial proceedings .... [I]t will be reviewed by the courts only to determine whether the sale was justified by a default and made in strict conformity to the terms of the deed and was free from fraud, deceit, or oppression.”
59 C.J.S. Mortgages § 739 (footnotes omitted). See generally Paint Rock Props. v. Shewmake, 393 So.2d 982, 983-84 (Ala. 1981) (““Generally the purpose for which the power of sale is given being to afford an additional and more speedy remedy for the recovery of the debt, the mortgagor is by the contract bound to exercise necessary promptness in fulfilling it and cannot complain of a legitimate exercise of the power.’ ” (quoting Abel v. Fricks, 219 Ala. 619, 621, 123 So. 17, 18 (1929))).
By its very nature, the concept of a foreclosure does not contemplate or refer to the “initiation” of some process, any more than it has reference to the midpoint of some process. Significantly, there is no reference in Alabama statutes to the concept of the “initiation of a foreclosure.” Insofar as we can tell, the term has no legal import. Likewise, as GMAC Mortgage notes, nothing in our statutes provides that the publication of notice of a foreclosure auction constitutes a foreclosure. As at least one federal court has recognized:
“Plaintiffs have cited no Alabama authority, and the undersigned has found none, under which the mere scheduling of a foreclosure sale, without more, has *850 been found to constitute a mortgagee’s exercise of the power of sale. A plain reading of that legal standard strongly suggests that it cannot, and that the power of sale is exercised by selling, not merely by running a newspaper advertisement preparatory to selling.”
Hardy v. Jim Walter Homes, Inc., (Civil Action No. 06-0687-WS-B, Jan. 18, 2007) (S.D.Ala.2007) (not reported in F.Supp.2d).
In point of fact, in its essential meaning, the term “foreclosure” is a reference to a particular action or event by which the mortgagor’s rights in the property are “foreclosed.” This loss by the mortgager of its rights — this “foreclosure” of its rights — does not occur over a period of time or in “bits and pieces” throughout the course of some “process”:
“The foreclosure of a mortgage in the natural and common usage of words means a termination of all rights of the mortgagor or his grantee in the property covered by the mortgage. In its essential meaning the word foreclosure’ imports definiteness in point of time as well as finality of consequence. In the common usage of words it denotes not the beginning, but the end, of a procedure adopted by the mortgagee to bar perpetually the rights of the mortgagor."
Levin v. Century Indem. Co., 279 Mass. 256, 259, 181 N.E. 223, 225 (1932). This “end” does not come until a foreclosure deed is signed and delivered by or on behalf of the mortgagee or its assignee. See, e.g., Capone v. Hinck, 163 Misc. 47, 49, 296 N.Y.S. 346, 349 (Mun.Ct.1937) (“Foreclosure of the lien does not take place upon the commencement of a foreclosure action, but upon a sale under the judgment of foreclosure.”). As one treatise well explains, foreclosure “denotes, not the beginning, but the end, of a procedure adopted by the mortgagee to bar perpetually the rights of the mortgagor, and includes the sale itself of the mortgaged property, rather than the steps preliminary to the sale.” 59 C.J.S. Mortgages § 639 (2009) (footnote omitted; emphasis added).
Early on, Alabama statutes and the decisions of this Court interpreting them reflected this essential understanding of a “foreclosure.” As this Court explained, “the alienation or transfer of the property” as part of a foreclosure sale is “complete on the execution of the conveyance in a proper manner.” Lewis v. Wells, 50 Ala. 198, 206 (1874) (emphasis added). The Lewis Court also spoke of the right of the parties to a foreclosure sale to “go on, and complete the title by a proper conveyance.” Id. “ ‘The auction sale,’ ” meaning the bidding process on the courthouse steps by which a buyer and a price are agreed upon, “ ‘very certainly did not operate to vest the legal title in the purchaser without the aid of a deed.”’ Ritter v. Moseley, 226 Ala. 648, 653, 148 So. 143, 147 (1933) (quoting Sanders v. Cassady, 86 Ala. 246, 249, 5 So. 503, 504 (1889) (emphasis added)). The Court in Ritter also explained that “the effect” of the statutes at issue (the predecessors of those at issue here) was to empower the individual who serves as the auctioneer “to complete the foreclosure by the execution of a deed in the name of the [holder] of the power [of sale].” Id. (emphasis added).
Thus, it is the act of executing and delivering a deed that “complete^] the foreclosure.” Id. See also, e.g., Ex parte Lynn, 727 So.2d 90, 91 (Ala.1999) (specifically holding in relation to a “sheriffs sale” of property at a public auction that, “[f|or an effective sale of property, there must be an execution, and delivery, of a deed to the property”); Tampa Inv. Grp., Inc. v. Branch Banking & Trust Co., 290 Ga. 724, 727, 723 S.E.2d 674, 678 (2012) (observing in the case of a mortgage foreclosure that, “[ujntil a deed under power is transferred *851 and consideration is passed; the sale itself has not occurred; there is only a contract to buy and sell ’ ” (quoting Federal Deposit Ins. Corp. v. Dye, 642 F.2d 837, 843 (6th Cir. Unit B Apr.1981) (emphasis added))).[4] That is, it is the execution and delivery of a deed by which the power of sale ultimately is exercised or “executed” and, in turn, the foreclosure of the mortgagor’s rights actually' occurs. As the Court in Kelly explained, therefore, a mortgagor has the right to pay the debt and related charges and avoid the foreclosure of its rights “at any time before the foreclosure is perfected.” Kelly, 217 Ala. at 537, 117 So. at 70.
We do not have before us a case involving defects in the foreclosure process itself that could prejudice the mortgagor. Section 35-10-13, Ala.Code 1975, requires that the notice of sale accurately state the time, place, and date of the sale. The notice published here did that. That section also requires the publication of the notice in a certain manner in a newspaper with a certain place of publication. The notice published here met those requirements as well. Further, the process entailed a receipt of bids at the courthouse in the proper county pursuant to § 35-10-14, Ala. Code 1975. Nothing in §§ 35-10-13 and 35-10-14 speak to who must perform those tasks, only what the tasks are. As for acceleration of the - mortgagor’s debt, we find nothing in the statutes requiring an acceleration of the debt as a prerequisite to foreclosure, whether judicial or by power of sale.[5]
It might be said that any deficiency in the foreclosure process in regard to the identity of the party who conducted that process was “cured” before that process concluded when Option One Mortgage Corporation assigned the mortgage to GMAC Mortgage. The more precise view, however, is that it is not the “process,” i.e., the preliminary mattérs of giving and publishing notice and receiving bids on the courthouse steps, by which a foreclosure of the mortgagor’s rights is effected. As noted above, such notices and the auction that follows lead to an agreement to buy and sell the property, but it does not constitute the foreclosure. It is the execution and delivery of a deed by which the power of sale ultimately is exercised and, in turn, the foreclosure of the mortgagor’s rights is accomplished. At the time GMAC Mortgage signed and delivered the foreclosure deed, it was in fact the holder of the mortgage. It had at that point the full power to exercise the power of sale so as to “foreclose” the mortgagor’s rights in the land and convey those rights to itself or to another.
- We therefore recognize, contrary to the holding of the Court of Civil Appeals, *852 that, with respect to nonjudicial foreclosures through the exercise of a power of sale, there is' no “initiation of foreclosure proceedings” with the import ascribed to it. Nor does a “foreclosure” of the mortgagor’s rights' occur at. some midpoint in that process. We are left then with the notion, long established as it turns, out, that the “foreclosure” of a mortgagor’s rights does not occur until the “end,” when a deed, divesting the mortgagor of its rights is signed and delivered,to a purchaser. . Wé therefore reverse the judgment of the Court of Civil Appeals and remand this case for the consideration of any issues pretermitted by that court and the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED. 
MOORE, C.J., and STUART, BOLIN, ■PARKER, SHAW, MAIN, and WISE, JJ., concur.
BRYAN, J., recuses himself.**

. This same language is now found as well in § 35-10-12, Ala.Code 1975, which'applies to mortgag'es executed after December 31, 1988. See Act No. 88-906, Ala. Acts 1988.

. “Foreclosure marks the end of the mortgagor's equitable right of redemption.” In re McKinney, 174 B.R. 330, 334 (Bankr.S.D.Ala. 1994). Conversely, "[fjoreclosure marks the beginning of the mortgagor's statutory right of redemption,” id., following a demand for possession by the purchaser. See § 6-5-251, Ala.Code 1975.

.
" 'The remedy of strict foreclosure is in its theory and nature applicable to cases where the plaintiff holds title-as against the defendant and the latter has a mere "right” or “equity” of redemption the exercise of which may be "foreclosed.” In the light of legal history and theory, the idea of foreclosing title to land is novel. Generally, at least, a so-called “foreclosure” where the defendant holds title, implies a sale of the premises.’ ”
Memorial Shrines, 270 Ala. at 271, 117 So.2d at 687 (quoting 118 A.L.R. 769 (1939)).

. See also Legacy Cmtys. Grp. v. Branch Banking & Trust Co., 310 Ga.App. 466, 713 S.E.2d 670 (2011) (explaining that, although a mortgagee successfully bid for property at a foreclosure auction, because the mortgagee never executed a deed to itself (or, because it already held legal title as the mortgagee, an appropriate instrument crediting the borrower’s account for the amount due from the successful auction bid) "the conveyance which defines a nonjudicial foreclosure, that is, the transfer of the borrower’s right of possession and its equity of redemption to the bank as the foreclosure sale purchaser, never occurred” (emphasis added)), rev’d in part on other grounds, Tampa Inv. Grp. v. Branch Banking & Trust Co., 290 Ga. 724, 723 S.E.2d 674 (2012).

. Given the fact that the statutory requirements for the sale prescribed by §§ 35-10-12 through -14 all appear to have been met, it is not surprising that the Pattersons put forth no evidence that they somehow were prejudiced by the fact that GMAC Mortgage did not hold the mortgage to the property at or before the time of the publication of notice of the foreclosure auction.